## LILLY v. STATE OF WEST VIRGINIA.

Circuit Court of Appeals, Fourth Circuit.
November 8, 1928.

No. 2702.

H. R. Gamble, Sp. Asst. Atty. Gen., and Armistead A. Lilly, of Charleston, W. Va. (James Damron, U. S. Atty., of Huntington, W. Va., Louis E. Graham, Chief Legal Adviser, Prohibition Administrator, Sixth District, of Beaver, Pa., and F. Horton Smith, Legal Adviser, Prohibition Administrator, Sixth District, of Pittsburgh, Pa., on the brief), for plaintiff in error.

Charles W. Ferguson, Pros. Atty. of Wayne County, W. Va., and W. Earl Burgess, both of Wayne, W. Va., for the State of West Virginia.

Before WADDILL and PARKER, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. Plaintiff in error, hereinafter called defendant, is a pro-

hibition agent in the service of the federal government. While chasing an automobile which he had reasonable cause to believe was engaged in transporting intoxicating liquor in violation of the National Prohibition Act, the automobile which he was driving struck and killed a pedestrian at a street intersection in the outskirts of Huntington, W. Va. He was indicted for involuntary manslaughter, and the case was removed to the federal court. He was there convicted of the charge, and in this writ of error he asks that the conviction be reversed, particularly because of errors in the charge of the court and in the refusal to give certain instructions prayed as to the law governing the case.

There was evidence that, at the time the car driven by defendant struck the deceased, it was being driven at a speed of around 35 or 40 miles an hour. Defendant was trying to overtake a car, which from information received and observations made he had reasons to believe, and did believe, was the car of a notorious violator of the liquor laws, and was loaded with liquor at the time. This car was fleeing from him down Piedmont road in the outskirts of the city of Huntington. As defendant approached the intersection of Piedmont road and Vinson street, deceased, with his wife, attempted to cross Piedmont road. Defendant testified that he was sounding the siren attached to his car, and was keeping a careful lookout. Shortly before he reached the intersection he had to pass a furniture truck, which put him on the left side of the street. About this time he observed the deceased and his wife crossing the street, and applied his brakes, but it was impossible to stop the car in time to avoid striking deceased. There was testimony that the wife of the deceased went on across the street in safety and that deceased was struck because he became confused, and stopped, and then stepped forward in front of the car. Defendant testified that in the emergency created he attempted to drive between deceased and his wife so as to avoid striking either of them, and that he would have succeeded in doing so if deceased had not stepped forward after having stopped.

If defendant's evidence is believed, therefore, while driving rapidly in an effort to overtake an automobile loaded with liquor, he was sounding a siren as a warning of his approach, was keeping a careful lookout, and in a moment of unexpected danger did everything that he could to stop his car and avoid striking deceased.

The following ordinances of the city of Huntington were introduced in evidence, viz.:

"Section 363 C: No vehicle of any kind, and here enumerated in this section, shall be operated on the streets, avenues, alleys and boulevards of the city at a greater rate of speed than is herein set out. Vehicles designed for carrying passengers on arterial highways, twenty-five miles per hour; business district, twenty miles per hour, other streets twenty-five miles per hour.

"Section 336: *Driving: Right-of-way: Pedestrians:* Pedestrians shall have the right of way at all intersection or cross walks except those controlled by traffic officers or traffic devices, and then the pedestrian shall be controlled by such traffic officer or traffic device, the same as vehicles.

"Section 334: Upon approaching any person walking in the traveled portion of any streets, avenues, road, alley or boulevard, or a horse, or any animal being led, ridden or driven thereon, or a crossing of intersecting streets, avenues, roads, alleys or boulevards, or a bridge or short turn, or a curve, or a descent and also in passing such person or such horse or other animal in traversing such crossing, bridge, turn, curve or descent, a person operating a motor vehicle or motor-cycle shall have the same under control and shall reduce its speed to a reasonable and proper rate if such horse or other animal being so led, ridden or driven, shall appear to be frightened," etc.

Defendant requested the court to give the jury the following instructions, which were refused, viz.:

"The court instructs the jury that if they believe from the evidence in this case that Mack B. Lilly was a federal prohibition officer at the time and occasion mentioned in the evidence, and that he was honestly and in good faith executing and attempting to perform a duty imposed upon him by the laws of the United States at the time of the accident, and in so doing, used reasonable care and diligence commensurate with his duty and the apparent danger, if any, then you will find him not guilty.

\* \* \* \* \* \* \*

"The court further instructs the jury that, although they may believe from the evidence that the defendant, Lilly, just prior to and at the time of the accident resulting in the death of Mate Ferguson, was violating the speed limit, and that said Lilly did not properly observe the rules and regulations of traffic at the Vinson Street crossing, yet the defendant should not be convicted if the jury further believes that the defendant, Lilly, while then acting as a federal prohibition agent, was in pursuit of a Dodge car which he believed and

had reason to believe was unlawfully transporting intoxicating liquors, and that said Lilly was using reasonable care and diligence, under the circumstances, for the safety of the public, and was acting in good faith, and if the jury believes he was so acting then they should acquit the defendant Lilly."

After refusing these instructions, the court, in the course of his charge, gave the jury the following instructions to which exception was duly taken, viz.:

" * * * If you believe from the evidence beyond a reasonable doubt that the intersection of Vinson Street and Piedmont Road, the intersection in proof here, was not controlled by a traffic officer or traffic device, then you may find that the deceased, while attempting to cross at this intersection, had the right of way, while negotiating this crossing over, and it then became and was the duty of the defendant approaching this said intersection, to use the care and caution of a reasonable, prudent man, to reduce the speed of his car to the point where he could control said car and stop it, if necessary, to avoid hitting the deceased at said intersection. * * *

" * * * If the jury believes from all the evidence before them, beyond all reasonable doubt, that the defendant, because of the excessive speed at which he was driving or by driving on the wrong side of the street, was unable to avoid the striking of the deceased, and did thereby negligently strike, and kill, the deceased, then the jury may find the defendant guilty of involuntary manslaughter, as charged in the indictment.

* * * * * * * * *

" * * * In my opinion, as a matter of law, it made no difference whether he did or did not have a whistle on that car, because, in my opinion, as I instructed you, under the laws of the City of Huntington part of the City of Huntington extends into Wayne County. Ferguson had the right of way over Piedmont Road at Vinson Street, and, in my opinion, as a matter of law, *it was the duty of Lilly, under these ordinances and laws*, as a citizen of the State of West Virginia residing therein and living therein, and under the control of the laws of the State of West Virginia, *when he approached that crossing, to have his car under such control that he could avoid any possibility of hurting any one.* * * * (Italics ours.)

"Under that construction of the law which I give to you as law, and which it is my duty and responsibility, it seems to me that it makes exceedingly small difference whether or not he was blowing the whistle, whether or not he jumped one way or the other way, when he reached the Vinson crossing, and where the Fergusons were at that crossing (provided they were at the crossing). It is for you to decide, not me; but I think the evidence is pretty complete that they were at that crossing and were going across Piedmont Road and that, such being the case, it was Lilly's duty to so handle that dangerous machine, and it was likewise the truck man's duty—if the truck man did not run across and hit them without stopping; no matter how many whistles blew, he would have been guilty of the same crime—to so conduct himself as to observe and give to Fergusons the rights which the law gives.

* * * * * * * * *

"Now, there is no question of the fact but what Lilly had a right, based on information he had, to catch that car if he could; but, as I said a while ago, that did not give him a right to break any law of the state of West Virginia or the city of Huntington to do it."

In refusing to instruct the jury substantially as requested in the requests made by defendant from which we have quoted, and in charging the jury as thus set forth, we think that the learned District Judge committed error prejudicial to the defendant. Prohibition agents are, of course, not above the law. It is their duty, in attempting to apprehend criminals, as it is the duty of other officers of the law, having regard to existing ordinances and the circumstances in which they are placed, to exercise reasonable care and caution for the safety of the public; and, if they fail to do so, and such failure results in the death of any one, they are undoubtedly guilty of manslaughter. But we think that the court went too far in charging the jury that it was the duty of defendant, while chasing a suspected criminal, to have his car under such control in approaching a street intersection that he could avoid any possibility of hurting any one; that deceased had the right of way, if crossing at an intersection not controlled by an officer or traffic device; that the sounding of the whistle and acts relied upon as exercise of care by defendant made no difference, if deceased had the right of way; and, in effect, that the defendant should be convicted, if the death of deceased resulted from defendant's being unable to stop because of excessive speed, and that what was excessive should be determined, not by the circumstances of the case, but by the speed ordinances of the city of Huntington.

In this charge of the court, sight was apparently lost of the fact that the city's

speed ordinances should be interpreted, not alone in the interest of the pedestrian, but for the protection of the public, having due regard to the rights of others, lawfully having to use the streets and highways, and this is especially true as to those engaged in the execution and enforcement of the criminal laws of the land. The failure to recognize speed ordinances under such circumstances must be viewed in the light of the rights of others to be affected, and a contrary view would operate unreasonably and be highly prejudicial to the public. The officer in this case was warranted in attempting to make the arrest under the circumstances, and he is by reason thereof excepted from the limitations of the speed prescribed by the city ordinance in issue, provided the jury believed that he acted in good faith in what he did, and with the prudence, care, and caution that an ordinarily prudent person would have exercised under the circumstances in which he was placed; the degree of care required being commensurate with the dangers existing, and to be increased in proportion to such dangers should there be an increase thereof.

■ The traffic ordinances of a city prescribing who shall have the right of way at crossings and fixing speed limits for vehicles are ordinarily binding upon officials of the federal government as upon all other citizens. Commonwealth v. Closson, 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C, 939; United States v. Hart, 26 Fed. Cas. No. 15,316, page 193; Johnson v. Maryland, 254 U. S. 51, 41 S. Ct. 16, 65 L. Ed. 126. Such ordinances, however, are not to be construed as applying to public officials engaged in the performance of a public duty where speed and the right of way are a necessity. The ordinance of Huntington makes no exemption in favor of firemen going to a fire or peace officers pursuing criminals, but it certainly could not have been intended that pedestrians at street intersections should have the right of way over such firemen or officers, or that firemen or officers under such circumstances should be limited to a speed of 25 miles, or required to slow down at intersections so as to have their vehicles under control. Such a construction would render the ordinances void for unreasonableness in so far as they applied to firemen or officers engaged in duties, in the performance of which speed is necessary; and we think that they should be construed as not applicable to such officers, either state or federal, under such circumstances. State v. Gorham, 110 Wash. 330, 188 P. 457, 9 A. L. R. 365; Farley v. Mayor of New York City, 152 N. Y. 222, 46 N. E. 506, 57 Am. St. Rep. 511; Hubert v. Granzow, 131 Minn. 361, 155 N. W. 204, Ann. Cas. 1917D, 563; State v. Burton, 41 R. I. 303, 103 A. 962, L. R. A. 1918F, 559; Edberg v. Johnston, 149 Minn. 395, 184 N. W. 12.

In the Gorham Case, supra, the court well said:

"That the enforcement of statutory or ordinance provisions limiting the speed at which a motor-propelled vehicle shall be driven over a public highway, against a peace officer, would have a tendency to hamper him in the performance of his official duties, can hardly be doubted. The case in hand affords an illustration. Here the felon was fleeing with a stolen automobile. Naturally he would pay but little regard to the minor offense of exceeding the speed limit. And, if the sheriff must confine himself to that limit, pursuit in the manner adopted would have been useless, since the felon could not have been overtaken. The rule contended for would also hinder the public peace officer in enforcing the statutes regulating traffic upon the state highways. These statutes contain somewhat stringent regulations as to the speed a motor-propelled vehicle may be driven over them, and contain no exception in favor of the peace officers whose duty it is made to enforce them. If these officers may not pursue and overtake one violating the regulations without themselves becoming amenable to the penalties imposed by them, the old remedy of hue and cry is not available in such instances, and many offenders who are now brought to answer will escape."

For the reasons stated, we think that the action of the trial court should be reversed, and a new trial awarded.

Reversed.