STATE of North Carolina, Plaintiff–Appellant,

v.

Lemans L. IVORY, Defendant–Appellee.

No. 89–5123.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1989.

Decided July 2, 1990.

William Dale Talbert, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., argued (Lacy H. Thornburg, Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., on brief), for plaintiff-appellant.

Rudolf A. Renfer, Jr., Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., Raleigh, N.C., on brief), for defendant-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

The question before us is whether a United States Marine may remove to federal court, pursuant to 28 U.S.C. § 1442(a)(1), his state criminal prosecution arising out of an accident which occurred while he was driving in a military convoy. We agree with North Carolina's contention that Ivory's ground for removal was insufficient under *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), because he did not aver a federal defense. We reverse the judgment of the district court and direct it to remand this case for further proceedings in the North Carolina courts.

## I.

The state charges against Lemans Ivory, a United States Marine, resulted from an accident on August 16, 1988, while Ivory was driving a truck in a military convoy. The convoy was returning from Cherry Point to Camp LeJeune, North Carolina, traveling west on four-lane Highway 24. It proceeded to make a left hand turn across the eastbound lanes of the highway onto Highway 172. The first twenty trucks of the convoy made the turn without incident. Ivory approached the intersection traveling at about five to seven miles per hour, and accelerated through it without stopping. His truck collided with a car in the inside, eastbound lane of Highway 24 causing its driver, Jason Pickett, to be fatally injured.

On August 17, 1988, Ivory was charged with unintentional death by motor vehicle and failure to yield the right of way in violation of N.C.Gen.Stat. §§ 20–141.4 and 20–155, respectively. The second charge was subsequently dismissed. Ivory then petitioned the Eastern District of North Carolina for removal pursuant to 28 U.S.C. § 1442(a)(1). The state did not file a motion to remand, and the removal petition was granted on October 11, 1988.[1]

Ivory then moved to dismiss the charge on the ground that the state prosecution violated the Supremacy Clause. Following two evidentiary hearings, the United States magistrate concluded that Ivory was entitled to immunity from state prosecution because he was an agent of the federal government acting under the laws of the United States and because he believed that his conduct was necessary and justifiable. *See In re Neagle*, 135 U.S. 1, 75, 10 S.Ct. 658, 672, 34 L.Ed. 55 (1890). The district court adopted the magistrate's proposed findings of fact and recommended conclusions of law and granted defendant's motion to dismiss.

North Carolina appeals.

## II.

Ivory contends that the removal of his case to federal court was proper because, at the time of the accident which gave rise to the state charges, he was driving in a military convoy and believed that it was safe to enter the intersection with his convoy truck. We hold, however,

---

1. Ivory contends that by failing to file a motion for remand within thirty days after filing of the notice of removal, the State has waived its right to raise this issue on appeal. *See* 28 U.S.C. § 1447(c). We disagree. The thirty-day limitation applies only to objections to defects in removal procedure. North Carolina's objection here is that the court lacks subject matter jurisdiction, an objection that may be raised by the parties at any time or by the court *sua sponte*. *See* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3739 (1985 & Supp.1989).

eht1001

that these allegations do not constitute a federal defense as required to support removal to federal court under *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).[2]

In *Mesa*, United States Postal Service employees attempted to remove to federal court their state criminal prosecutions for traffic violations which arose in the course of their mail delivery duties. One employee had been charged with misdemeanor-manslaughter after she struck and killed a bicyclist with her mail truck. The second individual received a ticket for speeding and failing to yield the right-of-way after his mail truck collided with a police car. *See California v. Mesa*, 813 F.2d 960, 961 n. 2 (9th Cir.1987). The postal workers argued that they were entitled to remove under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because "the state charges arose from ... accident[s] ...

which occurred while defendant[s] [were] on duty and acting in the course and scope of [their] employment with the Postal Service." *Mesa*, 109 S.Ct. at 962.[3] The Supreme Court held, however, that a "scope of employment" defense was insufficient by itself to support removal. It stressed that § 1442(a) is a pure jurisdictional statute which requires averment of a colorable federal defense in order to satisfy the requirement of Article III that a case arise under the Constitution or laws of the United States. *Id.* at 964, 968. Since defendants "ha[d] not and could not present an official immunity defense to the state criminal prosecutions brought against them," the Court held that they were not permitted to remove their cases to federal court. *Id.* at 967.

Like the Postal Service workers in *Mesa*, Ivory has not alleged a defense of federal immunity.[4] Ivory was subject to local traf-

**2.** The dissent argues that the state is estopped from challenging the removal of this case on appeal by its failure to object below. However, we are loathe to find waiver when subject matter jurisdiction is at issue and when a recent Supreme Court decision has issued clarifying the jurisdictional boundaries of § 1442(a) removal. Moreover, as the dissent concedes, we may properly consider on appeal whether "jurisdiction exist[ed] at the time of judgment." *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). We conclude that it did not. *Mesa* made clear that averment of a colorable federal defense is essential to Article III "arising under" jurisdiction in cases removed under § 1442(a)(1). Not only did Ivory fail to aver such a defense in his removal petition, he failed to present facts in the record taken as a whole that would support an immunity defense. Thus, remand is warranted because "[t]he posture of this case even at the time of judgment also barred federal jurisdiction." *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951). *See* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3739. Any other result would "work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them." *American Fire & Casualty Co.*, 341 U.S. at 18, 71 S.Ct. at 542.

**3.** The removal provision at issue, 28 U.S.C. § 1442(a)(1), states:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for

the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

**4.** Both Ivory and the dissenting opinion apparently believe that *Mesa* can be satisfied by some talismanic invocation. Ivory's petition for removal simply tracked the "color of office" language of the federal officer removal statute. By itself, this is insufficient to satisfy *Mesa*'s requirement that a federal defense be averred in the removal petition. However, since *Mesa* was decided five months after the petition was filed, we also consider whether, on this record, Ivory could have alleged a colorable federal defense that would have warranted removal.

The dissent contends Ivory could have done so by amending the removal petition to allege that he was "engaged in the performance of his lawful duties and was acting in a manner which he determined was necessary and proper in the discharge of his duties." However, merely reciting the magic words "necessary and proper" will not satisfy *Mesa*'s jurisdictional requirement if the underlying facts averred, or indeed existing on the whole record before the court, do not make out a colorable federal defense. The defect here is not curable by amendment because jurisdiction was not only insufficiently pleaded, it is impossible of establishment. *See Newman–Green, Inc. v. Alfonzo–Larrain*, — U.S. —, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989).

fic laws concerning rights of way, speed limits and the like, *Johnson v. Maryland,* 254 U.S. 51, 56, 41 S.Ct. 16, 65 L.Ed. 126 (1920); *Lilly v. West Virginia,* 29 F.2d 61, 64 (4th Cir.1928), and he has not alleged anything in the conduct of his federal responsibilities which justified his violation of these laws. *See Maryland v. Soper,* 270 U.S. 9, 34, 46 S.Ct. 185, 191, 70 L.Ed. 449 (1926); *People v. Zidek,* 691 F.Supp. 1177, 1178 (N.D.Ill.1988). To the contrary, as part of his standing orders as a military driver, Ivory was instructed that all motor transports were to comply with local traffic laws. Similarly, at his pre-convoy briefing, Ivory received orders to obey all traffic rules and to maintain the convoy only if oncoming vehicles yielded the right of way. Otherwise, he was to stop and let the other vehicles pass through safely.

Many of the facts in dispute here do not speak to the federal character of the incident and are simply matters for the state courts to resolve. North Carolina contends, for example, that Ivory failed to yield the right of way, as he was required by state traffic laws and his military orders to do. The state points out that there were no functioning traffic lights, signalmen or other mechanisms at the accident intersection that allowed the convoy to acquire the right of way. Thus, drivers of oncoming vehicles had no legal obligation to give up the right of way and every reason to believe that the military drivers would yield as the law required them to do. Ivory, on the other hand, asserts that because two cars in the eastbound lanes of Highway 24 had stopped, he assumed all other oncoming traffic would do the same. While this assertion may well serve as a defense to the state prosecution, it does not establish the basis of a claim of federal immunity. We conclude that Ivory's prosecution under local traffic laws was based on conduct "not justified by his federal duty," *Soper,* 270 U.S. at 33, 46 S.Ct. at 190, but, if anything, in conflict with it. *Compare Montana v. Christopher,* 345 F.Supp. 60 (D.Mont.1972) (officer immune from suit under state traffic laws where he had reported malfunctioning truck to superiors but was ordered to use it to complete emergency snow removal in connection with a flood).

Of course, an "officer need not win his case before he can have it removed," *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969), but under *Mesa* he must allege facts that would support a colorable immunity defense if those facts were true. Federal immunity has never extended so far as to " 'place [government officials] beyond the reach of the criminal law.' " *Mesa,* 109 S.Ct. at 967 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 429, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976)). The " 'regulation of crime is pre-eminently a matter for the States,' " and there is a " 'strong judicial policy against federal interference with state criminal proceedings.' " *Id.,* 109 S.Ct. at 969 (quoting *Arizona v. Manypenny,* 451 U.S. 232, 243, 101 S.Ct. 1657, 1665, 68 L.Ed.2d 58 (1981)). Every state has an interest in protecting its citizens from drivers who are reckless or intoxicated; that interest does not vanish whenever the driver happens to be a federal employee in a government car or a military truck. Where no colorable federal defense is averred, state prosecutors should not be forced to "choose between prosecuting traffic violations hundreds of miles from the municipality in which the violations occurred or abandoning those prosecutions." *Mesa,* 109 S.Ct. at 969. Moreover, if every traffic violation involving a military driver could be removed to a federal forum, it would quickly transform these tribunals into local traffic courts. *See Georgia v. Waller,* 660 F.Supp. 952, 954 (M.D.Ga. 1987); *Virginia v. Harvey,* 571 F.Supp. 464, 465 (E.D.Va.1983).

Section 1442, of course, operates under the Supremacy Clause to displace state interests in the prosecution of traffic offenses, but only to the extent that its constitutionally-derived requirements are met. In the unusual case, where some special exigency exists, the state interest in regulation of its highways must give way under § 1442 to the federal interests implicit in any defense of immunity. For example, state law will not apply to federal officials

"engaged in the performance of a public duty where speed and the right of way are a necessity." *Lilly*, 29 F.2d at 64. However, Ivory has alleged nothing which justified his making the left hand turn without yielding the right of way to oncoming vehicles. The convoy was returning from a routine transport of marines; nothing resembling an emergency existed. Ivory had no reason to accelerate through the intersection. His orders were to maintain a minimum distance of at least one-and-one-half truck lengths between vehicles. He was under no order prohibiting vehicles in the convoy to separate more than a maximum distance apart. There may, of course, be circumstances where military drivers may properly invoke the removal provisions of § 1442(a)(1). We cannot hold, however, that the mere presence of a driver in a military convoy automatically gives rise to a colorable claim of immunity from local traffic laws. *Compare id.* at 64 (federal officer immune from prosecution for speeding while pursuing a fleeing felon); *City of Norfolk v. McFarland*, 143 F.Supp. 587 (E.D.Va.1956) (officer immune from prosecution for speeding while enroute to execute raid of a suspected illegal still).

### III.

A word is due on the dissenting opinion, which we believe fails to follow the Supreme Court's decision in *Mesa* and undermines the interests of all states in the enforcement of their traffic laws.

The dissent contends that Ivory has presented a colorable claim of immunity because he "was under orders from his military superiors to proceed into intersections if he saw that it was safe to do so" and "[h]e did think it was safe to enter into this intersection." This reasoning is, of course, tautological. In point of fact, it is only safe and reasonable to enter an intersection when one has the right of way. The kind of routine order relied upon by Ivory, which outlined the same duty already incumbent upon him under ordinary traffic laws, cannot without more be the basis of federal immunity. At bottom, the dissent is simply relapsing into the same

"scope of employment" test for removal of state prosecutions which was explicitly rejected by the Supreme Court in *Mesa*, 109 S.Ct. at 962, 967–68.

To be in federal court under § 1442 one must first allege a colorable federal defense, and the only conceivable federal defense here is immunity from the criminal enforcement of state and local traffic laws. The dissent would have the very act of driving in a military convoy establish a federal immunity defense, despite the absence of any military emergency, the lack of any order to maintain a discrete distance between convoy trucks, and the absence of any indication to oncoming vehicles that they should stop and yield the right of way. To establish a federal immunity defense in this situation, resulting in dismissal of the criminal charges, is "carte blanche" for drivers in a convoy to proceed as they please, notwithstanding state laws to the contrary. The rules of the road depend for effect on universal observance. Highways are great equalizers, but the dissent would inaugurate under the rubric of immunity defenses a judicially conceived hierarchy of motorists. While this may be of comfort to those now cloaked with immunity, it is a chilling prospect for pedestrians and other drivers who must use the roads. Here the military driver's actions resulted in the death of a motorist who was doing only what state traffic laws entitled him to do. Had there been any exigency stemming from the duties of military service or federal employment, this would, we repeat, have been a different case. There was none here, however, and we are reluctant to reduce in the form of a federal immunity defense the respect for stop signs, yield signs, and speed limits that every driver owes.

The judgment of the district court is reversed. This case is remanded with instructions to remand it in turn to the North Carolina courts.

REVERSED.

PHILLIPS, Circuit Judge, dissenting:

In this case the United States has successfully removed to federal court a state

criminal prosecution against a member of its armed forces based on the latter's conduct in the course of performance of his military duties, and has in federal court then successfully proved in adversarial evidentiary proceedings the defendant's entitlement to the federal defense of official immunity under the Supremacy Clause. Without addressing the merits of the immunity defense, the majority now reverses that decision and remands the prosecution to state court, holding that removal under 28 U.S.C. § 1442(a)(1) was not justified in the first instance, hence that federal jurisdiction was irretrievably lacking from the outset, because the removal petition did not sufficiently aver the federal defense that was later proved in federal district court.

I think this is wrong legally. Its effect is to deprive a federal agent of a factually and legally sound determination by a federal court of his entitlement to official immunity in a situation for which that defense was classically designed. I respectfully dissent.

### I

As indicated, the majority does not reach the merits of the immunity defense, instead reversing and remanding to state court for lack of federal subject matter jurisdiction. I therefore address first the jurisdictional issue.

The majority finds jurisdiction lacking solely because Ivory's petition for removal under 28 U.S.C. § 1442(a)(1) failed on its face to comport with the requirements of *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), for failure to contain a specific averment of a federal defense. Assuming the deficiency, it has long since been revealed as merely a procedural one which was cured by later filings and formal proof of the jurisdictional facts and as having indeed been waived by the state.

*Mesa* was only decided on February 21, 1989, five months after filing of the removal petition. The state did nothing in the district court to invoke *Mesa*'s new (or clarified) pleading requirement even after it was announced. For though the case was pending in the district court for two more months—until April 17—the State never moved in that court to remand the prosecution to state court.

As is obvious from the full record, any effort by the state to have the case remanded after *Mesa* would have been unavailing in any event. For by the time *Mesa* was announced, there could have been no doubt about the existence of federal jurisdiction over this case. Long since, on October 24, 1988, Ivory had filed a motion to dismiss, in which he specifically averred the federal defense that he was entitled to dismissal

> pursuant to Article VI of the United States Constitution [the Supremacy Clause], because he was an agent of the United States Government engaged in the performance of his lawful duties and was acting in a manner which he determined was necessary and proper in the discharge of his duties.

J.A. at 16. Had the State brought *Mesa* to the district court's attention during the two months after that decision came down, jurisdiction would not have been defeated. A simple amendment of the removal petition to include the language in the motion to dismiss would have sufficed to satisfy *Mesa*'s pleading requirement if that had been thought necessary. *See* 28 U.S.C. § 1653. Indeed the allegations in the motion to dismiss could then properly have been treated as a sufficient amendment. *See Willingham v. Morgan,* 395 U.S. 402, 407 n. 3, 89 S.Ct. 1813, 1816 n. 3, 23 L.Ed.2d 396 (1969). If even more factual specificity had been thought necessary, *cf. id.* at 409 n. 4, 89 S.Ct. at 1817 n. 4 ("more detailed showing might be necessary" in criminal case), it obviously could have been supplied at that point. Having failed to raise what was never more than a curable procedural defect, the state simply had waived it as a basis for objection. *See* note 1, *supra.*

In any event, at the stage that we now consider the state's belated jurisdictional challenge, any mere pleading deficiencies in jurisdictional allegations, whether or not earlier cured or technically waived, are of

course immaterial. For we now review a record in which the district court, without objection to its jurisdiction, has tried on the merits and entered judgment for a removing defendant upon a dispositive federal defense. In such a situation, the issue on appeal is not whether the case was properly removed but whether, as of the time judgment was entered, the district court had jurisdiction. *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 705, 92 S.Ct. 1344, 1348, 31 L.Ed.2d 612 (1972). That the asserted defense was at least sufficiently colorable to support federal jurisdiction was surely established as of the time of the judgment finding it proved on the merits.[1]

## II

Because I would reject the state's jurisdictional challenge, I would find it necessary, as the majority does not, to consider the state's further challenge to the district court's determination that on the merits Ivory was entitled to immunity. Doing so, I would affirm that decision. The district court's findings of fact and conclusions of law on that issue are unassailable.

To prove his entitlement to immunity from criminal prosecution for vehicular homicide by the state, Ivory had the burden to prove that (1) he was performing an act which he was authorized to do by the law of the United States, and (2) in performing the act he did no more than what was necessary and proper for him to do. *In re Neagle*, 135 U.S. 1, 75, 10 S.Ct. 658, 672, 34 L.Ed. 55 (1890). This venerable principle,[2] derived from the Supremacy Clause, has over time been refined in respects critical to its application here. The requirement that the conduct in issue be necessary and proper does not demand proof of necessity and propriety in fact, but only that at the time of its occurrence the agent honestly and reasonably thought the conduct necessary and proper in the discharge of his federally imposed duty. *Clifton v. Cox*, 549 F.2d 722, 728–30 (9th Cir.1977) (federal narcotics agent immune under *In re Neagle* principle to state murder prosecution for shooting fleeing felon). The test as refined thus incorporates both a subjective and an objective component: the agent's motive for his conduct must be an "honest" one, *i.e.*, not criminal or wanton, but simply the doing of his duty; and his belief in the necessity must be a reasonable one under the circumstances. *Kentucky v. Long*, 837 F.2d 727, 745 (6th Cir.1988) (FBI agent immune under *In re Neagle* principle to state burglary prosecution for conduct in "sting" operation); *In re McShane's Petition*, 235 F.Supp. 262 (N.D.Miss.1964) (U.S. Marshal immune under *In re Neagle* principle to state prosecution for breach of peace and inciting riot for ordering tear gas dispersal of crowd protesting James Meredith's admission to state university). Un-

---

**1.** *Mesa* itself confirms that removal jurisdiction under § 1442(a)(1) cannot be denied solely on the basis of a pleading deficiency in the removal petition if jurisdiction is otherwise established on the whole record before the court. As the *Mesa* Court was careful to say, jurisdiction was lacking in that case because the defendants both "ha[d] not and *could not* present an official immunity defense to the state criminal prosecutions brought against them." 109 S.Ct. at 967 (emphasis supplied). On the jurisdictional record in *Mesa*, which consisted solely of the state's criminal charging documents and the removal and remand papers, the Court was able to find jurisdiction not only insufficiently pleaded in the removal petition but actually impossible of establishment. This could be said in *Mesa* because it was manifest on the whole record that the defendants could not prove anything more than that they were acting in the course of their federal duties as mail carriers when the accidents in issue occurred. On the

whole record in *Mesa*, therefore, jurisdiction was not merely insufficiently pleaded, its absence was affirmatively shown. Moreover, in *Mesa* the State of California filed a timely objection to the removal petition, in the form of responsive motions to remand, which North Carolina has failed to do in this case. 109 S.Ct. at 962.

**2.** The principle has been worked out and applied both in habeas corpus and removal settings, and of course applies substantively the same way in each. In habeas, rejection of the immunity defense results in denial of the writ, allowing prosecution to proceed in the state court. *See, e.g., Morgan v. California*, 743 F.2d 728 (9th Cir.1984). In removal proceedings, a federal rejection of the immunity defense does not require remand; prosecution by the state proceeds in the federal court. *See, e.g., Tennessee v. Davis*, 100 U.S. 257, 25 L.Ed. 648 (1880).

der this principle, immunity may therefore be found even where a federal agent's belief about the necessity for his conduct is mistaken and his judgment about its propriety flawed. *McShane*, 235 F.Supp. at 274.

The district court faithfully applied those principles to the evidence in this case in finding Ivory entitled to immunity. There was more than ample evidence to support the critical factfindings that Ivory was under orders from "his military superiors to proceed into intersections if he saw that it was safe to do so," and that "he did think it was safe to enter this intersection and he did so in obedience to his orders." J.A. at 22.

These facts were found by a magistrate, and adopted by the district court after an independent review of the record, on the basis of an evidentiary hearing at which Ivory and the investigating State Highway Patrol Officer testified. More specific factfindings by the magistrate emphasize the correctness of the district court's decision.

First, there was no doubt that Ivory was acting under direct orders of his superiors respecting his conduct as one of the truck drivers in a military convoy. The magistrate found that:

> During that day [of the accident], the defendant was ordered by his military superiors to drive a 5 ton military truck in a convoy. He was given a briefing and instructions which included the directive that he maintain the proper distance between each vehicle in the convoy and obey all traffic laws. The proper distance between trucks was one and a half truck lengths.

J.A. at 20. It was a dark night, and though there were normally traffic lights at the intersection where the accident occurred, there were no operational signals at the time of the accident, as they were in the process of being replaced. Concededly there was no military emergency or need to go fast. *Id.* As the twenty trucks preceding Ivory in the convoy turned left through the intersection, "traffic in the right lane [of the intersecting highway] had stopped, yielding the right of way to the convoy." *Id.* at 20–21. Following the truck in front

of him, Ivory proceeded through the intersection at 5–7 miles per hour. *Id.* at 21. Ivory did not see Jason Pickett's car, which unlike the stopped cars heading east in the right hand lane, did not stop to yield to the convoy, but proceeded in the left lane past the stopped cars in the right lane into the intersection when the collision occurred. *Id.* at 22.

Under these circumstances, the critical issue for Ivory's official immunity defense became whether he reasonably believed his action of entering the intersection was necessary and justifiable in carrying out his orders to maintain his assigned place in the convoy. "[B]ecause of his demeanor while testifying," *id.*, the magistrate fully credited Ivory's testimony respecting his perceptions and motivation in proceeding as he did. Of critical importance in this connection is the following testimony by Ivory:

> Q: Corporal Ivory, you said you had a duty to yield to the vehicles that were going east, why did you not yield to them in this particular case?
>
> A: As I was about to yield, I was coming, actually I was about to make a complete stop, the truck was slowing down, and when I drive I start off in second gear because this is the easiest gear for the truck;
>
> At this time the cars that had yielded or came to a complete stop, that if I'm not mistaken, going east, they had flashed their high beams letting me know that it was okay to proceed along with the other trucks;
>
> At this time I thought it was my better judgment to go ahead and complete because it was safe.
>
> Q: Now did you receive any instructions along this line?
>
> A: As in proceeding?
>
> Q: Yes.
>
> A: Yes, I did.
>
> Q: Okay. Can you explain to the Court what general instructions you had received about that?
>
> A: Well, on previous briefings they say, like I said before, follow all, obey all traffic regulations and rules and if you have the right of way or a car, the oncoming cars give you the right of way,

go ahead and maintain, maintain the convoy, but if you don't, then you have no other choice but to stop and let the other vehicles pass through safely.

Q: Were you following these instructions on this occasion?

A: Yes, I was.

Q: When you were proceeding on did you feel that you were following the instructions of your sergeants and the people that instructed you on how to maintain the convoy?

A: Yes.

J.A. at 81–83.

I suggested at the outset that this was a classic case for applying the immunity principle, as the district court correctly did. Here a Marine corporal, under direct orders to maintain the integrity of the military convoy in which he was a driver except as it became apparent that he must yield the right of way, was confronted with exactly the sort of conflict of possible paths of duty for which the immunity defense is designed. He chose to proceed in obedience to the primary federal duty, perceiving that all oncoming traffic in the opposite lanes had yielded the right of way to his convoy. This was an eminently reasonable choice under the circumstances then apparent to Ivory. Other cars heading east into the intersection had stopped, obviously yielding to the passage of the convoy as it turned through the intersection. The perception that other traffic coming upon the intersection and seeing the stopped cars would also yield was reasonable, even though mistaken as things developed.

A critical distinction between this case and *Mesa*, both of which involved claims of immunity from state criminal prosecutions for traffic law violations, lies in the nature of the different federal duties involved. In *Mesa*, the only duty—as reflected in the whole record—was the general duty to deliver the mail—accurately and expeditiously. No one reasonably could have believed that in performing that general duty it was necessary and proper to risk violating state traffic laws of general applicability. *Cf. Johnson v. Maryland*, 254 U.S. 51, 56, 41 S.Ct. 16, 65 L.Ed. 126 (1920) (principle does not grant "a general immunity from state law while acting in the scope of [federal] employment"). The *Mesa* Court therefore could say that under the circumstances revealed on that record, removal was not warranted because the defendants "could not present an official immunity defense." 109 S.Ct. at 967. In the instant case by contrast Ivory's duty was not the comparably general one simply to drive his truck independently from Point A to Point B safely and expeditiously, but a more specific one to drive his truck, *while maintaining an assigned place in a convoy*, from Point A to Point B expeditiously and safely. The general duty being performed in *Mesa* posed no inherent risk of conflict with state traffic laws; the specific duty being performed in the instant case demonstrably did, thereby creating a need for the immunity defense not present in *Mesa*.

In this critical distinction lies the adequate safeguard against the danger noted in *Mesa*, of permitting routine removal of state traffic law prosecutions to federal courts. 109 S.Ct. at 969.

Like the federal marshals in *In re Neagle* and *McShane*, the federal narcotics agent in *Clifton*, the FBI agent in *Long*, and many other federal officials and agents confronted with conflicting claims of duty, Ivory was plainly entitled to the federal immunity accorded him by the district court.

I would affirm.