983 F.2d 1073
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Stephanie PATTERSON, Plaintiff-Appellant,
v.
G.W. WENDEL, Defendant-Appellee.
 No. 91-3332.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 1, 1992.*
Decided Dec. 28, 1992.
 
 Before FLAUM, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Stephanie Patterson appeals pro se the propriety of the removal of her petition for a permanent protective order from state to federal court. She also challenges other aspects of the district court's decisions. We affirm.
 
 I.
 
 2
 When Patterson arrived for work one morning at the Indianapolis Appeals Division of the Internal Revenue Service, her supervisor, Peggy Smith, asked her to come to Smith's work station. Patterson refused, instead deciding to await the arrival of her union steward. After the steward did not show, she asked permission to use a telephone. Apparently finding Patterson to be refusing a work assignment, the supervisor denied her request.
 
 
 3
 Smith and G.W. Wendel, the Chief of the Indianapolis Appeals Office, then approached Patterson and gave her a note stating that she would be considered "AWOL" (absent without leave) for refusing to accept a work assignment. At that point Patterson began to tape record. Again she asked to enter the work area to use the telephone. Wendel refused her request. Then Patterson tried to present Wendel with an envelope containing a memorandum that she had intended to give him upon the arrival of the steward. Smith, who somehow got hold of the envelope, tossed it from the work area into the waiting area and told Patterson that Wendel would not accept the memo. Patterson returned the throw, flinging the envelope back into the work area. Wendel then picked the envelope off the floor and gave it to Patterson, who then passed it off to Wendel's secretary. Eventually, Wendel tore it in half. "Take this," he said to Patterson, who left the office after completing a sick leave form.
 
 
 4
 Armed with a tape recorder, Patterson returned to work the next day. Again she could not gain admittance to the work area. Wendel and Smith informed Patterson that she was not ready to receive a work assignment and would remain on AWOL status for as long as she continued to use the tape recorder. When Patterson entered the work area to use the telephone, Wendel ordered her to leave. He then stepped in front of her and placed his hand over the microphone of the tape recorder. In so doing, he touched Patterson's thumb. Later the same day, Wendel and two IRS inspectors delivered a personnel notice to Patterson's home. Wendel left the notice in Patterson's mail box. A week later he returned and left a second notice of personnel action in the mail box.
 
 
 5
 These events prompted Patterson to file a petition under Indiana state law for a temporary protective order in the Municipal Court of Marion County. In her pro se petition, Patterson alleged that Wendel had committed assault and battery in the work place and that he had trespassed onto her property when he delivered the two personnel notices to her home. Wendel filed a petition for removal to federal court. The district court entered an order finding that 28 U.S.C. § 1442(a)(1) provided it with jurisdiction to hear the case. At a later evidentiary hearing, the court ruled that Patterson was not entitled to a permanent protective order because she had failed to prove that Wendel had abused her or her property. In a later order the court held that Wendel had not trespassed and dismissed the cause with prejudice. The district court denied Patterson's motion to reconsider, and she filed a timely appeal.
 
 II.
 
 6
 Nine separate claims in Patterson's brief assert that the district court violated her due process and equal protection rights under the Fifth Amendment[1] to the United States Constitution. Two of those arguments challenge the district court's finding that it had jurisdiction to hear the case under the federal officer removal statute, which provides a federal forum for litigation involving acts committed by federal officials in the course of their employment. 28 U.S.C. § 1442(a)(1).[2] See also Mesa v. California, 109 S.Ct. 959, 967 (1989); Arizona v. Manypenny, 451 U.S. 232 (1981); Lepucki v. Van Wormer, 765 F.2d 86, 88-89 (7th Cir.), cert. denied, 474 U.S. 827 (1985). A federal officer's act by itself is insufficient grounds for removal. The government also must aver a federal defense to the litigation. Mesa, 109 S.Ct. at 970.
 
 
 7
 In its removal petition, the United States does not mention a possible defense but instead states in broad terms that the "case raises the federal question of sovereign immunity." R. 1. While Mesa expresses serious doubts about the constitutionality of federal court jurisdiction absent a federal defense, the Court did not elaborate on the degree of specificity with which the government must present that defense. The Fourth Circuit Court of Appeals, however, has read the defense requirement somewhat broadly, seemingly going so far as to eliminate the government officer's need to state a formal defense in the pleadings. Instead, when a case has proceeded to dismissal on the grounds of federal officer immunity under § 1442(a)(1), "the jurisdictional issue is whether the defendant has 'present[ed] facts in the record taken as a whole that would support an immunity defense,' whether or not he earlier had sufficiently averred a colorable defense as the basis for removal under Mesa's removal petition pleading requirement." North Carolina v. Cisneros, 947 F.2d 1135, 1139 (4th Cir.1991) (quoting North Carolina v. Ivory, 906 F.2d 999, at 1001 n. 2 (4th Cir.1990)).
 
 
 8
 In the case at hand the removal petition as well as the facts alleged in the pleadings raise a colorable defense to the suit. Sovereign immunity forbids all suits against the United States except those authorized by federal legislation. Kennecott Copper Corp. v. State Tax Com., 327 U.S. 573, 580 (1946) (Frankfurter, J., dissenting); United States v. Lee, 106 U.S. 196, 205 (1882); Hill v. United States, 50 U.S. (9 How.) 386, 389 (1850); United States v. Clarke, 33 U.S. (8 Pet.) 436 (1834). An exception to the doctrine allows suits--including injunctions--against government officers who allegedly act beyond their legal authority or pursuant to an unconstitutional statute. See, e.g., Schneider v. Smith, 390 U.S. 17 (1968). But one may not enjoin an officer who acts either within his statutory authority or in concert with the Constitution. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 695 (1949). The government contended in its motions that Wendel's actions occurred in the context of Patterson's employment relationship with the United States Department of Treasury. Essentially, the government's theory is that Wendel acted within the scope of his authority, a potentially valid defense to the litigation. Accordingly, the government properly removed the action to federal court, and the court correctly determined that it had jurisdiction.
 
 
 9
 Next, Patterson argues that the district court improperly granted the government an enlargement of time to answer her petition, thereby giving her cause of action "a longer life in Federal Court than it would have had in State Court and negating the immediacy of purpose of the state statute." Appellant's Brief, filed Jan. 16, 1992, at 4. If by this Patterson means that the clock suddenly stopped running on the twenty-day deadline set by the Marion County court to determine the availability of a permanent protective order, she is correct. But such is the effect of removal, divesting the state court of jurisdiction, Shannon v. Shannon, 965 F.2d 542, 545 (7th Cir.1992), triggering the Federal Rules of Civil Procedure, Schoenberger v. Oselka, 909 F.2d 1086, 1088 (7th Cir.1990), and introducing new--and possibly lengthier--timetables. While Rule 81(c) requires a party to file an answer within the longer of five days after removal or twenty days after service, Rule 12(a) enables the United States (or a federal officer or agency) to respond to a complaint within sixty days of service. The government requested, and the court granted, an enlargement of time under Rule 12(a) to respond to Patterson's complaint. In so doing, the court did not violate Patterson's constitutional rights.
 
 
 10
 Nor did the district court judge exceed his authority by what Patterson describes in her fourth issue as the court's "de facto voidance" of the temporary protective order issued by the municipal court judge. " 'Once the petition is filed in federal court, the state court is divested of jurisdiction over the case.' " Shannon, 965 F.2d at 545 (quoting Erwin Chimerinsky, FEDERAL JURISDICTION 234 (1989)). When the government removed the case from state court, the decision to grant a permanent protective order became one for the district court alone. Between the date of removal and the district court's final order, the temporary protective order expired and the twenty-day deadline for a hearing on a permanent order became moot. This, again, is the natural consequence of removal.
 
 
 11
 Patterson also takes exception to what she argues is the district court's re-definition of the case. According to Patterson, the court considered the jurisdictional issue before addressing the merits of her application for a protective order. In so doing, the court did not alter the issue but rather followed "the enduring principle that judges must consider jurisdiction as the first order of business...." Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp., et al., No. 91-1684 (7th Cir. Nov. 20, 1992), slip op. at 4. Moreover, the district court stated both in its order of February 20, 1991 and at the evidentiary hearing on March 21, 1991 that the issue for consideration was Patterson's petition for a permanent protective order.
 
 
 12
 In her sixth issue Patterson alleges that the district court applied the wrong standard of proof. She is incorrect. Obtaining a permanent protective order in Indiana requires proof by a preponderance of the evidence that the person against whom the order is sought abused the petitioner or his property. IND.CODE 34-4-5.1-5(a) (1992 Supp.); Tillman v. Snow, 571 N.E.2d 578, 580 (Ind.Ct.App.1991). This is the standard the district court followed.
 
 
 13
 The seventh claim alleges that the district court "arbitrarily re-defined" the meaning of assault, battery, and trespass. Patterson provides no development or support for this suggestion, and we are not obligated to make her arguments for her. Hartz v. Friedman, 919 F.2d 469, 475 (7th Cir.1990). After hearing Patterson's testimony, the district court judge concluded that none of the acts allegedly committed by Wendel amounted to assault, battery, or trespass. A district court's findings of fact, whether based on oral or documentary evidence, are entitled to a presumption of correctness unless clearly erroneous. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). We find nothing erroneous about the district court's conclusions on these matters of tort law.
 
 
 14
 In her next claim, Patterson argues in essence that the district court erred in its findings of fact and conclusions of law by denying her a permanent protective order. The statute requires proof by a preponderance of the evidence of abuse, including "conduct or threatened conduct that if completed would cause: (1) Bodily injury as defined by IC 35-41-1; or (2) Damage to property." IND.CODE 34-4-5.1-1 (1992 Supp.). In cases construing IND.CODE 35-41-1, bodily injury requires harm that Patterson has not sustained and violent acts that Wendel did not commit. See Payne v. State, 484 N.E.2d 16 (Ind.1985) (defendant struck victim in face); Charlton v. State, 408 N.E.2d 1248 (Ind.1980) (victim hit in face with barrel of a gun); Hanic v. State, 406 N.E.2d 335 (Ind.App.Ct.1980) (defendant caused victim bruises and scratches). In addition, the court held that Patterson failed to meet her burden of proving that Wendel had damaged her property by trespassing on her land. In the first place, Patterson does not allege that her property was damaged in any way. Nor has she established the elements of trespass. A trespass action requires the plaintiff to prove both possession of the land and that the defendant's entrance upon it was without justification. Sigsbee v. Swathwood, 419 N.E.2d 789, 799 (Ind.App.1981). The district court found that the IRS agents' presence on the land was justified. By stepping onto Patterson's property and knocking on her door, they did no more than what is permissible for the general public to do. Additionally, Wendel and the two individuals accompanying him had reason to go to Patterson's house. They were carrying out their statutory duty to provide Patterson with notice that a personnel action against her was pending. See 5 U.S.C. § 7513(b)(1). We therefore find that the district court correctly denied Patterson a permanent protective order.
 
 
 15
 Patterson's final claim quotes without citation an alleged finding of the district court. The source of this quotation and Patterson's dispute with it are unclear. Thus we cannot consider it. Spiegel v. Continental Illinois Nat'l Bank, 790 F.2d 638, 650 (7th Cir.), cert. denied, 479 U.S. 987 (1986).
 
 
 16
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Although the Fifth Amendment does not explicitly guarantee individuals equal protection under the law, the United States Supreme Court has recognized that the amendment contains an equal protection component. Bolling v. Sharpe, 347 U.S. 497 (1954)
 
 
 [2]
 (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.