ALBINA ENGINE & MACHINE WORKS, INC., an Oregon Corporation, Appellant,

v.

HERSHEY CHOCOLATE CORPORATION, a Delaware Corporation, et al., Appellees.

No. 17070.

United States Court of Appeals Ninth Circuit.

Sept. 28, 1961.

Krause, Lindsay & Nahstoll, by Gunther F. Krause, and Alan H. Johansen, Portland, Or., for appellant.

Koerner, Young, McColloch & Dezendorf and John Gordon Gearin and James H. Clarke, Portland, Or., for appellees Hershey Chocolate Corp. and others.

Wood, Wood, Tatum, Mosser & Brooke, by Erskine Wood, Portland, Or., for appellee Luckenbach S. S. Co., Inc.

Before BARNES, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

On April 2, 1958, a fire occurred aboard the S.S. Robert Luckenbach, an ocean-going cargo vessel owned and operated by appellee Luckenbach Steamship Company, while the ship was undergoing repairs in Portland, Oregon. The source of the fire was a welding operation being conducted by appellant Albina Engine & Machine Works. As a result of the fire, damage was sustained by the ship and by its cargo. The ship's damage was repaired by Albina.

This libel was brought by Cargo against both Albina and Luckenbach, charging both with acts of negligence. Albina and Luckenbach filed cross-libels against each other, Albina seeking to re-

cover compensation for its repair work and Luckenbach seeking to recover damage to its vessel and charging that the damage was due solely to the negligence of Albina.

The basic question presented by this litigation is as to the relative responsibility of Albina and Luckenbach for the fire and the resulting damage. The district court resolved this question in favor of Luckenbach. By interlocutory decree the court dismissed the libels of Cargo and Albina against Luckenbach. Liability of Albina to both Cargo and Luckenbach was decreed subject to subsequent ascertainment of the extent of damages.

Albina here appeals from this interlocutory decree. It concedes its own negligence, but asserts that Luckenbach also was at fault; that this fault bars any right in Luckenbach to recover damages from Albina and renders erroneous the court's decree that Albina alone was liable to Cargo.

The welding was in the repair of a ladder in the No. 5 hold. Since longshoremen were engaged in removing cargo from that hold, Albina was instructed by Luckenbach's port engineer to do the repair work between 6:00 and 7:00 p. m., that being the longshoremen's meal hour. Shortly after 6:00 p. m., the welding crew of three men entered the hold. The cargo, within two to five feet of the ladder, consisted of burlap bags and construction paper. No fire fighting equipment of any kind had been brought on board by the crew. A fire guard was rigged by placing two plywood walk boards end to end against the cargo to serve as a screen and a one-inch board along the bottom of this screen. A three to five gallon can of drinking water for the use of the longshoremen stood nearby.

Immediately upon the commencement of welding operations, a spark or piece of burning metal flew into the cargo of burlap bags either over or under the screen. The screen was pulled apart and the crew attempted, without success, to extinguish the fire with water from the can. Two of the men then came on deck

to secure a ship's firehose. They were frustrated in this move since the ship's fire line was not connected. The fire ultimately was extinguished by the Portland fire department with its own equipment.

The ship's fire line was not available for the reason that during the morning a section had been removed for repair. While the repair work was to be performed by Albina, it was understood that the ship's crew would assume the responsibility of providing an alternate line. This had not been done.

Albina charges Luckenbach with neglect in failing to provide a fire line and in failing to remove inflammable cargo from a hold where welding was to take place. Albina's position is that had it not been for this neglect the extent of the fire and the consequent damage to cargo would have been minimal and damage to the ship would have been completely avoided.

The question then is whether this neglect on the part of Luckenbach amounted to breach of any duty owing to Cargo or to Albina or (in the sense of creating an undue risk to its own property) to Luckenbach itself.

As to Cargo, the district court held Luckenbach to be free from liability under 46 U.S.C. § 182, commonly known as the "fire statute," by the terms of which a ship's owner is freed from liability for fire damage to its cargo "unless such fire is caused by the design or neglect of such owner."

█ It is well established that within the meaning of this statute "neglect of such owner" refers to the neglect of the owner personally or, in the case of a corporate owner, to the neglect of managing officers and agents as distinguished from that of the master or other members of the crew or subordinate employees. Consumers Import Co. v. Kabushiki Kaisha Kawasaki Zosenjo, 1943, 320 U.S. 249, 64 S.Ct. 15, 88 L.Ed. 30.

Albina contends that the neglect of Luckenbach was attributable to its port engineer and its marine superintendent

and that both of these persons were managing officers and agents.

■ As to the port engineer, the district court found that he had arranged with the ship's chief engineer for the providing of an alternate fire line and that the responsibility for the ship's failure to provide such a line lay with that ship's officer and not with any managing officer of the company. The court found that the delegation of this task was proper. As to the marine superintendent, whom Albina contends had responsibility for clearing the hold, the district court found him "a mere subordinate employee" and not a managerial officer.

We are satisfied that these findings cannot be held clearly erroneous. The fire statute then applied to free Luckenbach from liability to Cargo. There was no error in holding Albina to be solely liable for cargo damage.

As to any duty owing by Luckenbach to Albina respecting the existence of a fire line, the district court found:

"There was no contract or understanding between Luckenbach and Albina, or any obligation, that Luckenbach would have its fire line in readiness and available during welding, and Albina in no way relied on it when it undertook the job."

In opposition to this finding, Albina first contends that it was entitled to rely on the shipowner's warranty of seaworthiness and therefore that the welding crew was entitled to assume that the ordinary facilities of the vessel were available for its use.

■ In Hugev v. Dampskisaktieselskabet International, D.C.1959, 170 F. Supp. 601, 609 (affirmed in Metropolitan Stevedore Company v. Dampskisaktieselskabet International, 9 Cir., 1960, 274 F.2d 875, certiorari denied 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147), it was pointed out that the warranty of seaworthiness running in favor of the individual longshoreman did not extend to the stevedoring contractor. The same principle would apply here. Irrespective of any right in an individual repairman

to recover for personal injuries, the repairing contractor is not entitled to assume seaworthiness of the ship it is engaged in repairing.

■ Albina asserts that there was in this case an express warranty on the part of Luckenbach that it would provide an alternative fire line. The record does not bear this out.

Albina, it is true, understood that Luckenbach was assuming the responsibility for providing an alternative fire line and that Albina was not expected to render this service. This is, however, insufficient to establish any express warranty that at the time of the welding operation a fire line had been provided. Albina is simply saying again that it was, under these circumstances, justified in assuming that the facilities of the vessel were available.

■ When a repair contractor carries fire to the hold of a ship, however, he may not so casually discharge his responsibility to protect against the damage which that fire may cause. If the facilities of the ship are to be utilized, it is his responsibility to assure himself that they are in working order. If assurances of the shipowner are to be relied upon, they must at the very least have been given with intent and understanding that they would be relied upon and would relieve the welder of any need to satisfy himself as to the subject of the assurance.

■ The district court held applicable an ordinance of the City of Portland (§ 16–2529 of the Police Code) relating to welding or burning aboard ship. It is there required that a fire line be immediately available and that it be tested before any welding or burning commences; that fire extinguishers be on hand and ready for instant use. Albina contends that this ordinance is in conflict with federal statutes and regulations. We find no conflict nor any federal interest in preventing the City of Portland from legislating in this area in which the City's interest so obviously appears.

The district court found:

"The fire was caused solely by the gross negligence of Albina in the manner in which it attempted to do the welding. * * * The welding at the forward ladder could have been safely done, if proper and usual precautions had been taken. There was ample space—between 2 and 4 feet between the ladder and the cargo, in which to erect a fireproof, insulating screen, or curtain; notice to the ship's officers could have been given by the welders when they came aboard that welding was about to commence, and to have water ready; a hose either from the ship (if notice had been given) or from the dock could have been led into the hold with water pressure in it; one or more fire extinguishers could have been at hand. The requirements of the Portland City Ordinance regarding welding could have been complied with. If any of these precautions had been taken, there would have been no fire. Instead, none was taken. The only thing relied on was a can of longshoremen's drinking water left in the hold, which, of course, was utterly inadequate."

We conclude that there was no justifiable reliance by Albina on the existence of a working fire line; that neglect of Luckenbach in this respect violated no duty owing to Albina. Luckenbach's failure to have an alternative source of water available to service this hold did, it is undoubtedly true, create a risk of fire to which the prudent shipowners would not have exposed his vessel. However, as between Albina and Luckenbach, Albina's duty as repair contractor and its duty under the Portland ordinance imposed a standard of care that would both have prevented the fire and have eliminated any risk resulting from Luckenbach's neglect.

We conclude that the court was not in error in holding Albina liable to Luckenbach and Luckenbach free from liability to Albina.

Affirmed.