R. L. PRITCHARD & COMPANY, Inc., et al., Plaintiffs,

v.

S. S. HELLENIC LAUREL et al., Defendants.

SOLINA, INC., et al., Plaintiffs,

v.

HELLENIC LINES, LIMITED, Defendant.

Nos. 67 Civ. 2943, 69 Civ. 3173.

United States District Court, S. D. New York.

March 10, 1972.

Donovan, Donovan, Maloof & Walsh, New York City, for plaintiff R. L. Pritchard & Co., Inc., and others; David L. Maloof and Francis R. Matera, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for plaintiff Solina, Inc., and others; Vincent L. Leibell, Jr. and James F. Hart, New York City, of counsel.

Hill, Betts & Nash, New York City, for defendants; Donald B. Allen and Frank H. Loomis, New York City, of counsel.

METZNER, District Judge:

This is an action in admiralty to recover the value of a cargo of jute which was destroyed in a fire on the 57th Street pier, Brooklyn, New York, on August 3, 1966.

Plaintiff R. L. Pritchard and Company is the owner of the cargo. The defendant Hellenic Lines, Ltd. owns and operates the vessel on which the jute was shipped and the pier on which the fire occurred.

A similar action was commenced against Hellenic Lines by Solina, Inc., the owner of another cargo of jute which was destroyed in the same fire. The two cases were consolidated for trial. However, the parties in the *Solina* case have stipulated that they will abide the result in the *Pritchard* case.

The jute was shipped aboard the defendant's vessel Hellenic Laurel, arriving in Brooklyn on August 2, 1966. It was unloaded and piled on the north side of the pier close to the water's edge, reaching a height of approximately 12 feet. The pile was covered with a tarpaulin on the front and sides to a height of 8 feet. There was no covering on the rear, which was 3½ feet from the pier wall.

Jute is a highly flammable substance and is recognized as a dangerous cargo both by the United States Coast Guard and by the New York City Fire Department. Fire Department regulations require a pier owner to give the department 48 hours' notice before unloading a cargo of jute. No such notice was given in this case.

The regulations also require that the sprinkler system on a pier be inspected within 24 hours before jute is discharged onto the pier. The last inspection of the sprinkler system on the 57th Street pier before August 3, 1966 occurred on July 11, 1966.

In addition, Fire Department regulations state that whenever jute is on a pier there must be a special watchman to guard the cargo and protect against fire. No special watchman was on defendant's pier on August 3, 1966 and no extra guards had been hired. A roundsman, a gateman and a cribman were on duty, but they were not assigned specifically to watch the jute.

The gateman was stationed at the front gate and did not patrol the area of the pier in which cargo was unloaded. The cribman guarded the valuable cargo which was stored in the crib. The roundsman had a general supervisory

job and made four regular inspection tours of the pier each day. However, he did not remain constantly in the area of the jute or conduct any detailed inspection of it.

Fire broke out in the jute at approximately 12:20 p. m. on August 3, 1966. At this time, and for at least 20 minutes before the fire was discovered, no one was in this area of the pier except 3 men who were sampling cashew nuts. The longshoremen who worked on the pier had broken for lunch at 11:55 a. m., and within about 5 minutes they had all left the working area of the pier.

The fire was first noticed coming from the rear of the jute by one of the nut samplers. Within seconds the entire pile was in flames. Workmen attempted to extinguish the blaze and were joined after 15 minutes by New York City firemen. The cargo, however, was a total loss.

There has been some speculation at trial that a carelessly thrown cigarette was the origin of the fire. There is no doubt that longshoremen smoked on the pier even though it was against regulations and they were instructed not to. However, there is no proof that any smoking took place in the vicinity of the jute. The nut samplers, who were the only people on the pier during the lunch hour, did not smoke. The last longshoreman left the pier at approximately noon, 20 minutes before the fire broke out. If he had thrown a newly lighted cigarette against the jute pile as he left, the fire would have begun much sooner than it did. It takes a cigarette 5 to 12 minutes to burn from one end to another, and jute, once ignited, instantaneously bursts into flames. Therefore, it cannot be said with any certainty that the fire was started by an unextinguished cigarette.

Nor is there any proof of spontaneous combustion or an electrical short circuit. Both the Coast Guard and the New York City Fire Department found the origin of the fire to be "unknown." This court adopts that finding. Any other conclusion would be purely speculative and unsupported by the facts in this record.

However, the mere fact that a fire has an unknown origin does not mean that it could not have been prevented by the exercise of due care. The plaintiff R. L. Pritchard and Company claims that the defendant failed to exercise due care to guard against fire in the jute and that this negligence caused the fire which destroyed the cargo. The defendant contends that it took all reasonable precautions and that no further diligence on its part could have prevented the accident.

At the threshold is the issue of the standard of care to which the defendant is to be held. In David Crystal, Inc. v. Cunard Steam-Ship Co., 339 F.2d 295 (2d Cir. 1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965), the court considered a provision in a bill of lading which terminated the carrier's liability upon discharge from the ship's deck. The court held that such a provision violated the Harter Act, 46 U.S.C. § 190 et seq., and that the bill continued to govern the relationship between the parties after discharge and before delivery, with the carrier becoming a bailee during this period. In Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800 (2d Cir. 1971), the bill of lading incorporated the Carriage of Goods by Sea Act [COGSA], 46 U.S.C. § 1300 et seq., as defining the relationship between the shipper and the carrier even when the latter was acting as bailee while the goods were on the pier. The court held, that this language did not control the relationship of the parties and that the carrier's obligations were those of a bailee.

There is no difference between the bill of lading in this case and the one in Leather's Best, supra. In the latter case, the clause provided that the word "carrier" shall include the ship etc. "whether acting as carrier or bailee. . . ." The bill of lading here provides that COGSA shall apply "throughout the entire time that the goods are in the

custody of the carrier." The defendant here therefore stands in the same position as the defendant in *Leather's Best, supra.*

As a bailee, the defendant would be liable for destruction of the jute resulting from its negligence, and the bailor makes out a *prima facie* case of negligence merely by showing delivery of the goods to the bailee and failure to return at the required time. *Leather's Best, supra* at 263. However, the burden of persuasion never shifts from bailor to bailee, and the bailee rebuts the bailor's *prima facie* case if he shows either how the loss occurred and that this was in no way attributable to his negligence, or that he exercised the requisite care in all that he did with respect to the bailed article so that, regardless of how the accident in fact transpired, it could not have been caused by any negligence on his part.

For its part, Hellenic Lines takes the position that the incorporation of COGSA into the bill of lading limited its liability for losses due to fire. 46 U.S.C. § 1304(2) (b). Under this provision of COGSA, the carrier is liable for losses due to fire only if caused by the negligence of an executive officer, manager, or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss occurred. The negligence of longshoremen or other workers on the pier would not render the carrier liable for losses due to fire if COGSA were to apply.

However, COGSA by its own language applies only to goods while they are on board ship—that is, "from tackle to tackle." 46 U.S.C. § 1311. The Harter Act, 46 U.S.C. § 190 et seq., applies to goods in the custody of the carrier before delivery and after discharge. § 190 provides that:

"It shall not be lawful for the . . . owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause . . . whereby it . . . shall be relieved from liability for loss or damage arising from negligence . . . Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

Insofar as the provisions of COGSA are inconsistent with the Harter Act, they cannot be incorporated into a bill of lading to cover the responsibilities of the carrier after discharge and before delivery of the cargo. The fire exemption provision of COGSA is such an inconsistent provision here and is null and void. Remington Rand, Inc. v. American Export Lines, Inc., 132 F. Supp. 129 (S.D.N.Y.1955); see also Fyfe v. Pan-Atlantic S.S. Corp., 114 F. 2d 72, 76–77 (2d Cir.), cert. denied, 311 U.S. 711, 61 S.Ct. 319, 85 L.Ed. 462 (1940).

The defendant seeks to rely on Mamiye Bros. v. Barber Steamship Lines, Inc., 241 F.Supp. 99 (S.D.N.Y.1965), aff'd, 360 F.2d 774 (2d Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed. 2d 70 (1966), to sustain the fire exemption provision in the present case. *Mamiye Bros.* concerned the "Act of God" exemption in COGSA. The court held that this provision was not inconsistent with the Harter Act and did apply to goods damaged by hurricane after discharge onto a pier. As the court pointed out, an "Act of God," by its very definition, includes as an essential element that the natural event and its consequences could not have been prevented even by the exercise of reasonable care. However, the mere fact that goods are damaged by fire does not eliminate the possibility that the fire was caused by negligence. Thus the *Mamiye* case is not in point.

The defendant, therefore, had the status of a bailee at the time of the fire on August 3, 1966. In accordance with the guidelines laid down in Leather's Best v. S. S. Mormaclynx, *supra,* and summarized above, the court holds that the plaintiff has satisfied its burden of

proof and that the defendant has failed to rebut the plaintiff's *prima facie* case.

 There can be no dispute that by failing to give the New York City Fire Department notice of the discharge of the jute, by failing to have its sprinkler system inspected, and by failing to have a special watchman to guard the jute, the defendant violated 3 New York City Fire Department regulations.

Defendant contends that it was not bound to abide by these local regulations because the Coast Guard's jurisdiction over piers pre-empts any local supervision. However, the Coast Guard regulations expressly state that:

"Nothing in the regulations in this subchapter shall be construed as preventing the enforcement of reasonable local regulations, now in effect or hereafter adopted, when such regulations are not inconsistent or in conflict with the provisions of the regulations in this part." 46 C.F.R. § 146.01–12.

Local ordinances similar to the ones here have been given effect in numerous cases. Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); Albina Engine & Machine Works, Inc. v. Hershey Chocolate Corp., 295 F.2d 619 (9th Cir. 1961). There is no conflict between the New York City regulations in question and those of the Coast Guard.

The loss here occurred by fire. The defendant has failed to show that its violation of the "watchman" regulation did not contribute to the cause of the loss. Obviously the regulation was adopted to help prevent just this type of occurrence. A pier owner cannot be permitted to police its pier in violation of Fire Department regulations, and then avoid liability for fire because the source of the initial spark cannot be determined.

The court finds the defendant liable for the full cargo loss, the exact amount of damages to be determined by a magistrate to be appointed on an order submitted by the parties.

The above shall constitute findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

So ordered.