**UNCLE BEN'S INTERNATIONAL DIVISION OF UNCLE BEN'S, INC. and Mars, Inc., Plaintiffs–Appellants,**

v.

**HAPAG–LLOYD AKTIENGESELLSCHAFT and Biehl & Co., Inc., Defendants–Appellees.**

No. 88–2125
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1988.

William J. Sneckenberg, Chicago, Ill., for plaintiffs-appellants.

John M. Elsley, Houston, Tex., for defendants-appellees.

Before POLITZ, KING, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Uncle Ben's International Division of Uncle Ben's, Inc. and Mars, Inc. appeal the summary judgment dismissal of their claims against Hapag–Lloyd Aktiengesellschaft and Biehl & Co., Inc. We affirm.

## Background

In April 1982 and April 1983, Uncle Ben's and Hapag–Lloyd, through its agent Biehl & Co., contracted for the transportation of rice from Houston, Texas to points in Europe. Hapag–Lloyd transported the rice in its vessels, completing most shipments by January 1984 and delivering the final shipment sometime prior to November 1984.

On November 13, 1985 Uncle Ben's filed suit against Hapag–Lloyd and Biehl & Co. in state court in Houston, alleging that contrary to their shipping agreements the rice was delivered in a contaminated state. Uncle Ben's alleged that the contamination resulted from a breach of defendants' express and implied contractual warranties, the negligent provision of storage containers, and general negligence. The complaint made no reference to federal statutes. Invoking 28 U.S.C. §§ 1337, 1441, and the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. § 1300 et seq., Hapag–Lloyd removed to federal court, contending that Uncle Ben's complaint, as amended, was cognizable in federal court.

Uncle Ben's filed an amended petition alleging breach of warranty and negligence focused on the storage containers, and moved to remand. The motion to remand was denied and Hapag–Lloyd moved for summary judgment, invoking limitations. Hapag–Lloyd asserted that the bills of lading, which it attached to its motion, incorporated the COGSA limitation of one year for the filing of suits for damage to goods shipped.

The district court granted Hapag–Lloyd's motion, concluding that the suit had not been timely filed. Uncle Ben's appeals, contending that the removal was improper, that COGSA's one-year limitation did not apply to the agreement to provide containers, but if it did, that the limitation was invalidated by the Harter Act, 46 U.S.C. App. § 190 et seq., and that Biehl & Co. remained liable for its negligence, separate from any claim under the bills of lading.

## Analysis

Contesting federal jurisdiction, Uncle Ben's maintains that the removal was in error and that the remand should have been ordered. One of Uncle Ben's allegations refers to the negligence of Hapag–Lloyd in providing the storage containers for shipment of the rice. Hornbook principles of negligence teach that to recover, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty; (2) the defendant

breached the duty; and (3) the breach directly and proximately caused (4) the plaintiff actual damage. *Prosser and Keeton on Torts,* 5th ed. 1984 at 164–65. These general principles guide the analysis of a maritime tort. *Consolidated Aluminum Corp. v. C.F. Bean Corp.,* 833 F.2d 65 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). To recover from Hapag–Lloyd, Uncle Ben's must prove damages to its rice while the rice was in the custody of Hapag–Lloyd. The Harter Act, governing a shipper's custody or care of property during the preloading phase, is federal legislation regulating commerce. *Ford Motor Co. v. Wallenius Lines,* 476 F.Supp. 1362 (E.D.Va. 1979). As such, the action involving its provisions could have been brought originally in federal court and, thus, was removable under 28 U.S.C. § 1441 and 28 U.S.C. § 1337. This remains true notwithstanding the artful pleading which makes no reference to federal statutes. *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359 (5th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Crispin Co. v. Lykes Bros. Steamship Co.,* 134 F.Supp. 704 (S.D.Tex.1955). Although the district court relied on COGSA to deny remand, we may consider alternate jurisdictional grounds, *sua sponte* if necessary. *Beers v. North American Van Lines, Inc.,* 836 F.2d 910 (5th Cir.1988).

Uncle Ben's next argues that the COGSA statute of limitations should not apply to the claims for damage to the rice because, even though the bills of lading incorporate COGSA and apply its attendant provisions to the preloading actions of Hapag–Lloyd, the bills of lading do not apply to the claims asserted because Uncle Ben's and Hapag–Lloyd had a separate agreement affecting the containers. Alternatively, Uncle Ben's contends that the COGSA limitations offend the Harter Act's prohibition against a carrier unreasonably limiting its liability through its bills of lading.

First we note that in response to Hapag–Lloyd's motion for summary judgment, Uncle Ben's offered no proof of a separate agreement for the provision of storage containers. Uncle Ben's affidavit merely mentions that Hapag–Lloyd was *aware* of Uncle Ben's requirement that its goods must be shipped in contamination-free storage containers, but it studiously avoids any mention of a separate agreement.

■ Uncle Ben's contends that since the bills of lading were issued after the containerization, they cannot apply to the claims in question. We concluded to the contrary . in *Baker Oil Tools v. Delta Steamship Lines, Inc.,* 562 F.2d 938 (5th Cir.1977). In *Baker Oil Tools* a carrier lost goods before they were loaded. The bill of lading was not issued because the goods were not loaded and the bill of lading typically issues at loading. In this situation we held the parties to the terms of the bill of lading which would have issued. Because the bill of lading would have incorporated COGSA and made it applicable to the period of custody during the preloading period, the carrier was held liable to the shipper under COGSA. *Id.*

[3, 4] Alternatively, Uncle Ben's maintains that the one-year statute of limitations drawn from COGSA, and made explicit in paragraph 19 [1] of the bills of lading, violates the Harter Act prohibition against unreasonable limitations of liability. If the parties extend the provisions of COGSA to the preloading phase, any inconsistency with the Harter Act must yield to the Harter Act. 46 U.S.C.App. § 1311, *R.L. Pritchard & Co. v. S.S. HELLENIC LAUREL,* 342 F.Supp. 388 (S.D.N.Y.1972). However, COGSA's limitation is not inconsistent with the Harter Act. *Ralston Purina Co. v. Barge Juneau & Gulf Carribean,* 619 F.2d 374 (5th Cir.1980).

■ Appellants' final argument relates to the dismissal of the complaint against Biehl & Co., contending that since COGSA does not apply in favor of Hapag–

---

1. Paragraph 19 provides in pertinent part:
   In any event the carrier and the ship shall be discharged from all liability in respect of loss, damage or delay unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

Lloyd, it should not apply as to Biehl & Co. We hold that the COGSA limitation is applicable to preloading and, thus, the Himalaya clauses in the bills of lading[2] make the limitation applicable to Biehl & Co. *See Brown & Root, Inc. v. M/V PEISANDER,* 648 F.2d 415 (5th Cir.1981). The district court properly dismissed the action against Biehl & Co.

AFFIRMED.

---

2. The bills of lading provide as follows:
   SERVANTS, AGENTS AND CONTRACTORS
   3. It is hereby expressly agreed that to the extent of the stipulation on this clause the carrier shall be deemed to be acting as agent on behalf of or trustee for the benefit of all other persons named in this clause and that the servants, employees and agents of the carrier shall not be liable whether in contract or in tort in their personal capacity for any loss of or damage or delay to the goods whatsoever and wheresoever arising and that without prejudice to the foregoing *every exemp-* *tion, limitation, liberty and immunity, whether printed, written, or incorporated by reference which under the Bill of Lading contract apply to the carrier shall in all respects enure also for the benefit of the servants, employees and agents of the carrier* as well as of such independent contractors (including their servants, employees and agents) whose services the carrier from time to time may engage in the operation of the vessel or any other means of transportation including loading, discharging and all services in connection therewith.