**MODERN OFFICE SYSTEM, INC., Plaintiff,**

v.

**AIM CARIBBEAN EXPRESS, INC., Defendant.**

**Civ. No. 91–1794 (RLA).**

United States District Court, D. Puerto Rico.

Sept. 8, 1992.

618

José Muñoz Silva, Mayaguez, P.R., for plaintiff.

José Alfaro Delgado, Calvesbert & Brown, San Juan, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

This case involves an action filed by MODERN OFFICE SYSTEM, INC. ("MODERN OFFICE") against defendant AIM CARIBBEAN EXPRESS, INC. ("AIM") for the loss of a shipment of 114 pieces of furniture transported from the port of Fernandina Beach, Florida to the port of San Juan, Puerto Rico. The complaint was originally filed on *March 11, 1991* in the Superior Court of Puerto Rico. AIM was served with process on May 22, 1991 and on June 21, 1991 filed a Notice of Removal to this court pursuant to the provisions of 28 U.S.C. §§ 1441 et seq.

Presently before the Court are a Motion to Dismiss and/or for Summary judgment filed by AIM on the grounds that plaintiff's claim is time barred and plaintiff's Motion to Remand alleging that we lack subject matter jurisdiction to entertain this action. Since plaintiff's motion challenges our jurisdiction, we will first address arguments on this issue.

## REMOVAL JURISDICTION

■ We note that plaintiff failed to move for remand within thirty (30) days following the filing of the Notice of Removal as required by 28 U.S.C. § 1447(c). However, this statute also provides that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Subject matter jurisdiction can be entertained at any time and it can be either raised by the Court sua sponte or by the parties to the proceedings. *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37 (2d Cir.1991); *State v. Ivory*, 906 F.2d 999 (4th Cir.1990); *Smith v. City of Picayune*, 795 F.2d 482 (5th Cir.1986).

In its Motion to Remand, plaintiff alleges that pursuant to the "savings to suitors" clause of 28 U.S.C. § 1333, it is entitled to pursue any common law remedies available in state court and that the removal was improper. Plaintiff further argues the federal sources of law invoked by defendant in support of the removal, to wit, the Shipping Act of 1916, as amended, 46 U.S.C.App. §§ 801 et seq. and the provisions of defendant's long form of bill of lading and tariff filed with the Federal Maritime Commis-

sion pursuant to said statute, are relevant only for purposes of AIM's time bar and limitation of liability defenses.

Although the district courts are conferred original and exclusive jurisdiction over admiralty and maritime cases, jurisdiction over alternate remedies available under local law are also reserved to the state courts. 28 U.S.C. § 1331 reads:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

(emphasis ours).

■ Accordingly, federal and state courts have concurrent jurisdiction to entertain in personam maritime claims based on common law and it is claimant's option to decide which of the two forums will hear his case. 1 Benedict on Admiralty (MB) § 122 (7th ed. 1992); Thomas J. Schoenbaum, Admiralty and Maritime Law § 3–13 (West Publishing 1987). This was specifically discussed in *Romero v. International Term. Operat. Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) where it was decided that even though there was federal maritime jurisdiction, removal was not allowable for common law claims commenced at the state level because the "saving to suitors" clause precisely preserved this choice. Removal could only be accomplished if diversity or some other jurisdictional grant existed. Accordingly, we must determine if there is a separate jurisdictional basis for the claim asserted in the complaint, apart from the general maritime provision.

Our inquiry starts with the Notice of Removal filed by defendant. Therein, AIM alleged that plaintiff had instituted an action for breach of a maritime contract of transportation and for the loss of certain pieces of office furniture entrusted to defendant for transportation from Florida to Puerto Rico under the terms of a bill of lading. Defendant also alleged that it is a Non–Vessel Operating Common Carrier ("NVOCC") and as such, is a common carrier by water in interstate commerce and is required by the Shipping Act to file a tariff with the Federal Maritime Commission.

Upon removing this action, defendant specifically cited the provisions of 28 U.S.C. § 1337 as a grant of federal question jurisdiction over plaintiff's action. The subject statute provides in pertinent part that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." 28 U.S.C. § 1337(a). We must then determine if plaintiff's action arises under such an Act of Congress regulating commerce. If the question can be answered in the affirmative, removal is proper under 28 U.S.C. § 1441 which reads as follows:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

■ A case arises under the Constitution, treaties or laws of the United States if it involves a claim premised on federal law. *Hernandez–Agosto v. Romero–Barcelo*, 748 F.2d 1 (1st Cir.1984); *Inter–American University of Puerto Rico, Inc. v. Concepcion*, 716 F.2d 933 (1st Cir.1983). That is, if the federal statute is a requisite element to the cause of action. *San Juan Legal Services, Inc. v. Legal Services Corp.*, 655 F.2d 434 (1st Cir.1981). In making this inquiry, we must examine the allegations of a "well-pleaded complaint" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) at the time of removal. *Magerer v. John Sexton & Co.*, 912 F.2d 525 (1st Cir. 1990). Plaintiff's characterization of his claim is not conclusive and it is not essential that the federal statutes appear cited in the complaint. *Uncle Ben's v. Hapag–Lloyd Aktiengesellschaft*, 855 F.2d 215 (5th Cir.1988). Defenses premised on fed-

eral statutes do not qualify as a jurisdictional source. *Colonial Penn Group, Inc. v. Colonial Deposit Co.,* 834 F.2d 229 (1st Cir.1987).

■ The complaint filed before the Superior Court of Puerto Rico requested relief for the loss of a shipment of furniture while being transported by water from Florida to Puerto Rico. The pleading states that defendant "is engaged in the transportation of cargo between the United States and Puerto Rico ..." [paragraph 2]; that "defendant (sic) requested and obtained services for the transportation of cargo ... between the United States and Puerto Rico ..." [paragraph 3] and that the merchandise was lost while being transported [paragraph 4]. Based on the foregoing, it is evident that plaintiff's cause of action is one for breach of the contract of maritime transportation with defendant AIM. The breach imputed to defendant consists of the loss of plaintiff's cargo during transportation. As a result thereof, plaintiff demands payment of $22,592.76 for the value of the cargo plus another $22,592.76 in lost profit. In its Motion to Remand plaintiff acknowledges that "this is a suit ... for loss of a shipment of furniture object of maritime transportation from ... Florida to ... Puerto Rico."

The domestic transportation of goods between ports of the United States is governed by the provisions of the Harter Act, 46 U.S.C.App. §§ 190 et seq., absent a contractual incorporation of the provisions of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300 et seq. *Ins. Co. of North America v. Puerto Rico Marine,* 768 F.2d 470 (1st Cir.1985); *American Intern. Ins. Co. v. M/V San Juan,* 730 F.Supp. 1190 (D.P.R.1990).

According to the agreement between the parties, the action presently before us is specifically regulated by federal statutes and therefore, is premised on a separate and independent jurisdictional basis. The parameters of the duties and obligations of the parties in this maritime transportation relationship are set forth in statutes regulating commerce; their rights and liabilities will be defined in accordance with a federal regulatory scheme. Defendant's responsibility, if any, under the terms and conditions of its bill of lading and tariff must be measured in accordance with the provisions of the Harter Act and the Shipping Act. Application of said statutes is necessary to determine AIM's liability in general and not only with respect to the defenses it has raised with respect to plaintiff's action.

Plaintiff tendered an amended complaint November 5, 1991 leaving its original claim intact and adding a second claim for defendant's alleged negligence in pursuing plaintiff's cargo claim. Not only is the original complaint devoid of any reference to a non-federal support upon which the claim is based but further, throughout its multiple filings plaintiff concedes that the original claim is a maritime transportation contract covered by the Harter Act. See, e.g., Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment filed on June 31, 1992 (docket No. 24). Additionally, plaintiff specifically mentioned local provisions when discussing the additional claim included as a second cause of action in the amended complaint. At paragraph 3 of the Amended Complaint plaintiff indicated that "jurisdiction of this Court is claimed under, as a *Federal Question* the Harter Act ... in *the First Cause of Action* and ancilliary (sic) jurisdiction is claimed in the Second Cause of Action base (sic) on the Civil Code of Puerto Rico." (emphasis ours).

■ Even if plaintiff chose not to identify its action as arising under the Harter Act, said statute governs. The Harter Act is in fact an Act of Congress regulating commerce within the meaning of 28 U.S.C. § 1337. See *Uncle Ben's,* 855 F.2d at 217 (Harter Act is federal legislation regulating commerce within 28 U.S.C. § 1337 and consequently provides independent removal jurisdiction); *Fireman's Ins. Co. of Newark, N.J. v. Gulf Puerto Rico Lines,* 349 F.Supp. 952, 955 (D.P.R.1972) (case properly removed as Harter Act/COGSA constitute acts of Congress regulating commerce within the meaning of § 1337); *Commonwealth of Puerto Rico v. Sea–Land Service, Inc.,* 349 F.Supp. 964, 954 (D.P.R.

1970) (removal proper since issues involving Harter Act/COGSA bring it within purview of § 1337). But see *Superior Fish Co. v. Royal Globe Insurance Co.*, 521 F.Supp. 437, 441 note 6 (E.D.Pa.1981) (questioning validity of ruling).

Consequently, we rule that an action for loss or damage to cargo during maritime transportation necessarily arises under the Harter Act or COGSA, as the case may be. Accordingly, this action was properly removed upon an independent grant of federal subject matter jurisdiction and plaintiff's Motion to Remand is hereby DENIED.

## STATUTE OF LIMITATIONS/TIMELINESS

We now turn to the issue of whether plaintiff's action is time barred. The following facts appearing from the Statement of Material Facts submitted by defendant in support of its Motion to Dismiss and/or for Summary Judgment are by plaintiff's own admission, uncontroverted.

1. On February 8, 1989, defendant AIM received from Cramer, Inc. a shipment of 114 pieces of furniture for transportation from the port of Fernandina Beach, Florida to the port of San Juan.

2. The cargo was in turn delivered by defendant AIM to Ocean Line of North Florida, Inc. for ocean transportation between said ports, on board voyage 50 of the barge "OCEAN CARRIER III".

3. The subject cargo was lost at sea by Ocean Line of North Florida, Inc. on or about February 10, 1989 and never reached the port of destination, San Juan, Puerto Rico.

4. Upon shipment of the cargo consigned to plaintiff, defendant AIM issued its bill of lading, document No. MFST32–032.

5. As of the date of shipment and of the loss in question, defendant AIM had on file within the Federal Maritime commission a "Domestic Offshore Freight Tariff No. 1 Containing Local Commodities Rates, Charges and Conditions."

6. Rule 7 of said tariff contains a Bill of Lading Specimen and the Terms and conditions of Carriage which Constitute Carrier's Long Form Bill of Lading.

7. The short form bill of lading incorporates by reference the provisions of AIM's long form bill of lading as found in the tariff.

8. The reverse side of AIM's short form bill of lading contains the following condition:

The shipper by tendering this bill of lading agrees that the custody and carriage of the goods is subject to all of the terms and conditions of the carrier's Bill of Lading and the applicable tariffs filed with the Federal Maritime Commission. Such terms and conditions shall be binding upon and shall govern the relations, whatsoever they may be between the carrier on the one hand, and the shipper or consignee on the other, in every contingency whatsoever. Shipper hereby certifies that he is familiar with all the terms and conditions of said bill of lading and tariffs so filed and posted. Said terms and conditions are hereby agreed to by the shipper and accepted for himself or his assigns.

9. Rule 7(b)(6) of the tariff, which forms part of the terms and conditions of carriage which constitute carrier's long form bill of lading provides:

As condition precedent to recovery, claims for loss and/or damage must be made in writing to AIM Caribbean Express, Inc. as provided for in Rule 24 herein.

10. Rule 24 of AIM's tariff reads:

*Time Limit for filing Loss of Damage claims*

As a condition precedent to recovery, claims for loss and/or damage must be made in writing within *six (6) months* from the receipt date of the Bill of Lading, accompanied by the ORIGINAL PAID FREIGHT BILL, and any action or suit on any such claim shall be commenced within *one year* from the date of the cause of action.

(emphasis ours).

It appears from the record in this case that the first claim submitted by plaintiff

to AIM was made per letter of *February 28, 1989*, thus within the six month period provided by Rule 24 of AIM's tariff. However, the complaint was not filed until *March 11, 1991* that is, over two years after the loss occurred.

■ We have seen that the reverse side of AIM's short form bill of lading specifically states that the shipper accepts those terms and conditions "for himself and/or his assigns." The tariff filed by defendant AIM with the Federal Maritime Commission has force of law and all interested parties are imputed knowledge of its provisions. Conditions included in schedules filed with the Federal Maritime Commission are binding upon all parties in interest and may be incorporated by reference into short form bill of ladings. *Ins. Co. of North America*, 768 F.2d at 474. This practice is authorized by the Shipping Act which in pertinent part reads:

> Such terms and conditions may be incorporated by reference in a short form of [bill of lading] actually issued for the transportation, or in any dock receipt or other document issued in connection therewith, by notice printed on the back of each document that all parties to the contract are bound by the terms and conditions as filed with the Federal Maritime Commission and posted, and when so incorporated by reference every carrier and any other person having any interest or duty in respect of such transportation shall be deemed to have such notice thereof as if all such terms and conditions had been set forth in the short form document.

46 U.S.C.App. § 844.

■ The one-year period of limitation imposed by AIM's tariff is valid and enforceable. Although the Harter Act does not specify a one-year limitation period as COGSA does at 46 U.S.C.App. § 1303(6), a carrier may impose a reasonable period without violating the provisions of the Harter Act which forbids carriers from lessening or relieving itself completely from liability. *Ins. Co. of North America*, 768 F.2d at 473. Other courts have agreed that when COGSA is extended to cover a ship-

ment beyond the period after the goods are loaded on board a vessel until discharged, COGSA's one-year limitation applies and is not incompatible with the Harter Act restriction. See *Ralston Purina Co. v. Barge "JUNEAU" & Gulf Caribbean*, 619 F.2d 374 (5th Cir.1980); *Uncle Ben's*, 855 F.2d at 217. Under the same reasoning, the one-year period of limitation of defendant AIM's tariff is not inconsistent with the Harter Act specifications since it does not completely relieve AIM from liability for loss or damage to cargo.

In response to the timeliness defenses raised by AIM, plaintiff has tendered an amended complaint which charges defendant with negligence in failing to protect its interest in recovering from the ocean carrier. As a corollary to this argument, plaintiff claims AIM acted as its agent in the prosecution of the claim against the true ocean carrier, Ocean Line of North Florida, Inc. Plaintiff further alleges that AIM is estopped from raising the timeliness defense.

Plaintiff points to several letters exchanged with AIM in support of these arguments. Our examination of the correspondence between these two parties can be summarized as follows.

*February 27, 1989* letter from AIM to plaintiff advising the loss of container 4966969 shipped via the "OCEAN CARRIER III", voyage 50. Defendant further informed plaintiff that it was filing a claim with the responsible steamship company which actually transported the goods, i.e., Ocean Line of North Florida, Inc.

*February 28, 1989* plaintiff filed its claim with defendant for the loss of its 114 pieces of furniture covered by bill of lading 3–14031.

*March 30, April 26, May 9 and June 14, 1989* letters from AIM advising plaintiff of its effort to obtain settlement of the claim from Ocean Line and/or its underwriters.

*August 29, 1989* letter from Mr. Alex Goldberg of AIM's New Jersey office to plaintiff advising of "problems between Ocean Line and Lloyds of London regarding payment." Said letter also indicated

that AIM "followed this action in order to get Ocean Line to pay the full amount of your claim" and "this could be a time consuming factor." Finally, the same letter cautioned plaintiff that since it had not requested insurance for the shipment in question, AIM's liability was limited to $50.00 per shipment.

*October 13, 1989* letter from plaintiff's counsel to Mr. Alex Goldberg inquiring as to "the nature of said problems", requesting to be periodically informed as to the status of the claim and indicating that his client would greatly appreciate any action on AIM's part to obtain full payment of the claim from Lloyd's of London.

*May 15, 1990* second letter from plaintiff's counsel to AIM's Puerto Rico office expressing his client's concern over the delay in payment, reiterating the client's request to be informed of the status thereof and advising that he had been "authorized to take whatever legal action necessary against your company to assure that full payment is effectuated." As of the date of this letter, plaintiff's action had already prescribed.

It was not until *March 11, 1991,* close to a year later, that plaintiff instituted judicial proceedings in state court.

### AGENCY

■ Plaintiff's attempt to convert defendant AIM into its "agent" for purposes of making a claim against Ocean Line is without any basis on the record and also ignores the nature of the business of a NVOCC and its legal relationship with the shipper on one hand and the ocean carrier on the other. The Shipping Act defines a NVOCC as " ... a common carrier that does not operate the vessels by which the ocean transportation is provided, and [who] is a shipper in its relationship with an ocean common carrier." 46 U.S.C.App. § 1702(17). See *Capitol Transportation, Inc. v. U.S.,* 612 F.2d 1312 (1st Cir.1979). See also, *Ins. Co. of North America v. S.S. AMERICAN ARGOSY,* 732 F.2d 299, 301 (2nd Cir.1984); *M. Prusman Ltd. v. M/V NATHANEL,* 670 F.Supp. 1141 (S.D.N.Y. 1987).

The customers of a NVOCC are the shippers under its bill of lading. In turn, the NVOCC is a shipper under the bill of lading issued by the ocean carrier.

Thus, for the purposes of the Shipping Act ... the NVOCC is a hybrid; it is a common carrier with respect to the shippers who use its services; as such it files a rate tariff with the Federal Maritime Commission and is subject to all laws governing common carriers. With respect to the vessel and her owner, however, the NVOCC is an agent of the shipper, and thus merely a customer—indeed, only one customer among hundreds on any given voyage.

*Ins. Co. of North America,* 732 F.2d at 301.

While the NVOCC is considered an agent of its shipper in relation to the vessel and her owner, the nature and scope of said agency is limited to the transportation services contracted by the NVOCC on the shipper's behalf. The NVOCC is itself liable to the shipper by virtue of the issuance of its own bill of lading, the tariff and the law applicable to the particular trade in which the NVOCC is involved, whether the Harter Act or COGSA. *Fireman's Ins. Co. of Newark.*

### MISREPRESENTATION

■ Our examination of the correspondence between the parties fails to reveal any malicious representation or promises to pay made by AIM with the intent to defraud plaintiff or induce it not to file suit until after the action had become time barred. Thus, the exceptional circumstances constituting estoppel or impediment of a carrier to invoke a time bar provision in its favor are not present in this case. *Michelena & Co. v. American Export and Isbrandtsen Lines,* 258 F.Supp. 479 (D.P.R.1966); *Fireman's Ins. Co. of Newark.*

In *Michelena,* a carrier was estopped from raising the one year limitations period when it backed out of settlement negotiations after the limitations period had expired. A specific finding was made in that

case to the effect that the carrier's manifestations had been made with the express intention of defrauding plaintiff. The court found otherwise in *Fireman's Ins. Co. of Newark* where it was held that even though the parties were still engaged in conversations after the expiration of the limitation period, no malicious representations had been made by defendant which would require application of the estoppel principle.

Our ruling is consistent with *Hemis Trading Corp. v. Navieras de Puerto Rico,* 705 F.Supp. 72 (D.P.R.1989) where the court found that defendant's communications, including an indication that it would settle if found liable, did not induce "plaintiff to let the caducity term run its course by making misrepresentations or otherwise incurring in unfair conduct." *Id.* at 74.

Mere settlement negotiations are not sufficient.

Estoppel arises where a plaintiff has been justifiably misled by the defendant's actions, which lull the plaintiff into a false sense of security and so induce it not to institute suit in the requisite time period.

*Birdsall, Inc. v. Tramore Trading Co., Inc.,* 771 F.Supp. 1193, 1197 (S.D.Fla.1991).

We find no misrepresentation in the correspondence exchanged between the parties to this action indicative of such conduct. Plaintiff is solely to blame for its own failure to file suit within the year as provided for in the applicable tariff. Further, as of *August 29, 1989,* when defendant clearly advised that Ocean Line might not pay the claim and that its own liability was limited to $50.00 per shipment, plaintiff still had available more than five months to institute proceedings against AIM.

Given these undisputed facts, we find that the action is time barred.

### CONCLUSION

Accordingly, it is hereby ORDERED that plaintiff's Motion to Remand... (docket No. 27) is hereby DENIED.

It is further ORDERED that defendant's Motion to Dismiss and/or for Summary Judgment (docket No. 7) is hereby GRANTED and the complaint is DISMISSED as time-barred.

It is further ORDERED that plaintiff's Motion to amend the complaint (docket No. 10) is DENIED.[1]

Judgment to be entered accordingly.

IT IS SO ORDERED.

1. Based on our ruling, allowing the amended complaint would be futile.