988 F.2d 120
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
KETTENBURG MARINE CORPORATION, Plaintiff-Counter-defendant-Appellee,
v.
YACHT TEREYKA, her engines, tackle, apparel, motor,
fixtures, and equipment, in rem, Defendant-Counter-claimant,
and
Halim NASSER, Defendant-Counter-claimant-Appellant.
KETTENBURG MARINE CORPORATION, Plaintiff-Counter-defendant-Appellee,
v.
YACHT TEREYKA, her engines, tackle, apparel, motor,
fixtures, and equipment, in rem, Defendant,
and
Halim NASSER, Defendant-Counter-claimant-Appellant.
 Nos. 91-56021, 91-56186.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 2, 1993.
Decided March 3, 1993.
 
 Appeal from the United States District Court for the Southern District of California; No. CV-88-1732-JET, Jack E. Tanner, Senior District Judge, Presiding.
 S.D.Cal.
 REVERSED AND REMANDED.
 Before PREGERSON, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Halim Nasser, owner of the yacht "Tereyka" ("the boat"), appeals the district court's entry of judgment in favor of Kettenburg Marine following a bench trial. Specifically, Nasser appeals (1) the entry of judgment in favor of Kettenburg on its breach of contract action for $36,198.60; (2) the district court's denial of any recovery on Nasser's negligence counterclaim; and (3) the entry of a post-trial order requiring Nasser to pay Kettenburg's attorneys' fees in the amount of $130,088.90. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988), and we reverse and remand the case for a new trial before a different district judge.
 
 
 3
 * EXCLUSION OF EVIDENCE
 
 
 4
 Nasser's case was based on the idea that Kettenburg was liable for damages to his boat caused by Kettenburg's failure to exercise due care as a bailee under admiralty law. In support of his case, Nasser attempted to offer evidence of Kettenburg's negligence, including testimonial evidence which he contended (1) would show Kettenburg was negligent in launching the boat without checking the operational status of the bilge pump system; (2) would place into doubt the testimony of Kettenburg employees who testified that in performing their work they had no need to and, in fact, did not remove the hose in question; and (3) would contradict a Kettenburg employee's testimony as to the time of day the boat was launched. Nasser argues the district court improperly excluded this evidence at trial.
 
 
 5
 We review evidentiary rulings by the district court for an abuse of discretion. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1989). We review a trial judge's decision to exclude live testimony for an abuse of discretion. R.B. Matthews, Inc. v. Transamerica Transp. Servs., 945 F.2d 269, 272 (9th Cir.1991). "A trial court abuses its discretion only if the exclusion 'prejudicially deprived [the defendant] of material evidence critical' to its defense." Id. at 273 (quotations omitted). "The burden of showing prejudice is particularly heavy in a bench trial." Id.
 
 A. Standard of Care in Launching the Boat
 
 6
 First, Nasser attempted to introduce evidence to show Kettenburg was operating under a standard of care unrelated to the repair contract when it launched the boat on July 20, 1988. Nasser offered to call Kettenburg supervisor "Gary Klers, who would testify ... that it was [Kettenburg's] general practice to check bilge pumps when they would launch a vessel, and they did not do so at this time...." The court rejected this offer of proof and held any standard of care concerning the bilge pumps, beyond Kettenburg's alleged policy of leaving the bilge pump controls undisturbed, had to be found in the repair contract. The court also prohibited Nasser's counsel from asking other witnesses about the status of the bilge pumps.
 
 
 7
 The exclusion of testimony concerning Kettenburg's standard of care in launching the boat was an abuse of the district court's discretion. Under Ninth Circuit law, "the repairing contractor is not entitled to assume seaworthiness of the ship it is engaged in repairing." Albina Engine & Mach. Works v. Hershey Chocolate Corp., 295 F.2d 619, 622 (9th Cir.1961). Kettenburg's policy of leaving the bilge pump controls undisturbed "assumes the seaworthiness of the ship," and so is not the correct standard in this case. Therefore, the district court's application of this lower standard of care, and its exclusion of evidence of both the proper standard of care and Kettenburg's breach of that standard, deprived Nasser of material evidence critical to his defense and counterclaim. In this instance, we conclude Nasser has met the heavy burden of showing prejudice.
 
 
 8
 B. Testimony Concerning Removing Hose During The Repairs
 
 
 9
 Second, Nasser attempted to offer expert testimony to show the hose in question must have been removed from the through-hull opening to complete the work performed by Kettenburg. In particular, Nasser offered testimony which would show the hose did not have sufficient slack to not be disconnected when the engines were jacked up, and requested the court personally to examine the distance between the hose and the engine mounts to see just how close the two are located. The district court, however, rejected Nasser's offers of proof, and concluded the Kettenburg employees did not remove the hose during the work as they had testified.
 
 
 10
 Even though Nasser pointed out to the court the potential bias inherent in the testimony of Kettenburg employees, the district court refused to allow testimony from the supervisor of those same employees which would contradict their claim that the hose had enough slack in it to allow the jacking of the engines without disconnecting the hose. Given the fact that Kettenburg performed its work right next to this hose, and that the only testimony concerning whether or not the hose was removed came from Kettenburg employees, we conclude the district court abused its discretion by excluding contradictory evidence concerning the hose, its length and placement relative to the work performed, and the need to disconnect this hose to complete the repairs.
 
 C. Evidence Concerning The Time of Launch
 
 11
 Finally, the district court excluded testimony from the Kettenburg yard supervisor Klers which allegedly would have directly contradicted the Kettenburg employee's testimony that the boat was launched at 11:00 a.m. on July 20, 1988. Nasser's counsel offered testimony from Klers, the supervisor responsible for directing the launching of the boat, who would testify the boat was launched mid-afternoon on that day.
 
 
 12
 The time the boat was launched is very important in this case. Nasser introduced evidence from an expert who, based on the flow rate of water through the hole, testified the boat took approximately 14 hours to sink to the depth at which it was discovered the following morning at 7:30 a.m.. Together, the time of the launch and the time the boat took to sink could show the hose was disconnected when the boat was launched. We conclude the district court prejudicially deprived Nasser of the opportunity to present this evidence supporting his argument that the boat was launched with the hose disconnected.
 
 D. Conclusion
 
 13
 We conclude the district court abused its discretion by excluding evidence offered by Nasser which contradicted the testimony of Kettenburg's employees, and which established a standard of care for launching the boat existing outside the repair contract. These exclusions prejudicially deprived Nasser of evidence critical to his defense and counterclaim.
 
 II
 JUDGE'S CONDUCT AT TRIAL
 
 14
 Nasser contends Judge Tanner's conduct at trial, including the prejudicial exclusions of evidence, resulted in an arbitrary decision and violated Nasser's right of due process.
 
 
 15
 "The manner in which a judge conducts a trial is reviewed under an abuse of discretion standard." Hansen v. Commissioner, 820 F.2d 1464, 1467 (9th Cir.1987). "The standard for reversal is whether the trial was unfair." Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1289 (9th Cir.1984), cert. denied, 469 U.S. 1190 (1985). "Because a trial judge has wide discretion in conducting a trial, a clear and precise showing of prejudice must be made to demonstrate judicial misconduct, particularly in noncriminal trials. Hansen, 820 F.2d at 1467. "A trial judge's comments geared toward facilitating an orderly trial are not, in and of themselves, prejudicial. Id.
 
 
 16
 Standing by themselves, Judge Tanner's comments on the validity of Nasser's case, although harsh and, at times, almost rude, do not entitle Nasser to a new trial. Nasser complains bitterly about Judge Tanner's ruling at the start of trial to have Nasser argue his case first. Under the law of bailments in admiralty, however, once the judge found Kettenburg had rebutted the inference of negligence, the burden fell on Nasser to prove Kettenburg was negligent. This ruling appears appropriate.
 
 
 17
 However, Judge Tanner's conduct at trial, including his prejudicial exclusions of Nasser's evidence, requires a retrial in this case. The court's prejudicial evidentiary rulings, frequent derogatory comments on the theory of Nasser's case, and labelling of Nasser as "the problem", adversely and unfairly affected Nasser's case. Here, we conclude Judge Tanner exhibited an attitude or state of mind which indicates an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes. Smith v. Commissioner, 800 F.2d 930, 936 (9th Cir.1986). Therefore, we remand the case for retrial.
 
 III
 REMAND TO A DIFFERENT DISTRICT JUDGE
 
 18
 Nasser requests we remand the case for retrial before a different district judge. Where, as in this case, there is no proof of personal bias, we may remand the case to a new judge only under unusual circumstances. Medrano v. City of Los Angeles, 973 F.2d 1499, 1508 (9th Cir.1992). In making this determination, we consider three factors:
 
 
 19
 (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 20
 United States v. Sears, Roebuck & Co., 785 F.2d 777, 780 (9th Cir.) (quotations omitted), cert. denied, 479 U.S. 988 (1986). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." Id. "A district judge's adamance in making erroneous rulings may justify remand to a different judge." Id.
 
 
 21
 After reviewing the transcript, we conclude unusual circumstances exist in this case which require remand to a different judge. Judge Tanner's quick rejection of Nasser's contentions at trial, coupled with his unshakable and repeated belief that Kettenburg was not at fault, leads us to agree that Judge Tanner would have a substantial difficulty in putting out of his mind previously-expressed views and findings. This conclusion is reinforced by Judge Tanner's comments to Nasser's counsel towards the end of trial:
 
 
 22
 The Court: Well, counsel, you have made enough offers of proof, if the Ninth Circuit looks at this case, that they'll know what your argument is.
 
 
 23
 Mr. Galam: But, Your Honor--
 
 
 24
 The Court: That's all you're entitled to.
 
 
 25
 Mr. Galam: I appreciate that, Your Honor. We've been with this case for two and a half years, and my intent is not--
 
 
 26
 The Court: That's one of the problems.
 
 
 27
 Mr. Galam: I don't understand that.
 
 
 28
 The Court: You're both the problem, both you and the plaintiff.
 
 
 29
 Mr. Galam: Well, with all due respect, I don't believe that I am the problem.
 
 
 30
 The Court: Both you and the plaintiff. You have had it too long.
 
 
 31
 (emphasis supplied). Moreover, a reassignment would preserve the appearance of justice without entailing waste and duplication out of proportion with the appearance of fairness.
 
 VI
 CONCLUSION
 
 32
 This case involves a man who takes his boat to a boatyard for repairs, then returns six weeks later to find his boat half-submerged at the end of a dock. In light of the controlling law, Nasser should have been allowed to present his evidence concerning both his defense to Kettenburg's breach of contract claim and his counterclaim for negligence. In this case, however, the judge's conduct at trial, including his prejudicial exclusions of Nasser's evidence, prevented Nasser from receiving a fair trial. Therefore, we reverse the district court and remand the case for a new trial before a different district judge.[1]
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Nasser also contends the district court erred in awarding Kettenburg $130,088.90 in attorneys' fees. We need not address this issue, however, because our decision to reverse and remand the case to the district court renders this issue moot
 Finally, Kettenburg argues it is entitled to receive costs and attorneys' fees for Nasser's frivolous appeal under Fed.R.App.P. 38. Here, we do not consider Nasser's successful appeal to be frivolous, and so we reject Kettenburg's request.